Samuel Willie OLIVER *v.* STATE of Arkansas

CR 95-30                                    918 S.W.2d 690

Supreme Court of Arkansas
Opinion delivered March 18, 1996
[Petition for Rehearing dismissed April 22, 1996.]

744

*Morehead & Morehead*, by: *Robert F. Morehead, Esq.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Samuel Willie Oliver raises two points in his appeal of four convictions for delivery of crack cocaine. He first contends that he was deprived of effective assistance of counsel and did not waive such. He, secondly, urges that his due process rights were violated owing to lack of information about the arresting officer's medical condition. Neither point has merit, and we affirm.

Samuel Oliver was charged with four counts of delivery of crack cocaine. The State's principal witness was an undercover investigator, Thomas Washington, who made the four drug purchases from Oliver. Officer Washington later became ill. He originally suffered from environmental encephalitis and multiple brain aneurysms. He also suffered from sarcoidosis, a disease in which lesions develop throughout the body. Oliver tried to discover Officer Washington's medical records, and his request was denied by the trial court.

Prior to trial, Oliver retained four different attorneys for his defense, and each one was terminated at his request. The last termination of counsel occurred at the omnibus hearing before trial commenced, where Oliver announced his intention to proceed *pro se*. The following colloquy occurred between Oliver and the trial court:

SAM OLIVER: I'm doing my own pro se.

JOE OLIVER: He's doing his own pro se.

SAM OLIVER: I filed my own motions already.

JOE OLIVER: And he subpoenaed —

SAM OLIVER: Thomas Washington.

JOE OLIVER: — Thomas Washington, and we have a copy of the subpoenas right here, both of them.

COURT: Well, I've got to — to recommend you not do this, Mr. — both Mr. Olivers, you know.

SAM OLIVER: I want to represent —

COURT: You're proceeding by yourself and think you're — as I've told you before, I think that dangerous to do that.

. . . .

COURT: Well, I can't force you to have an attorney. You see, I can't force one on you and I think it's against your better interest to do that, but I can't make you —

SAM OLIVER: I'm prepared —

COURT: — have an attorney.

SAM OLIVER: I'm prepared for the case today.

COURT: At the trial of this case, I will still have an attorney sitting at the counsel table in case you need one.

SAM OLIVER: No, I don't think so, Your Honor, 'cause —

COURT: Well, I think so we will. We will have an attorney sitting at the counsel — you don't have to use him.

COURT: You can ignore him. That's your prerogative, but there will be one available for you.

. . . .

Okay, Mr. Smedley, [attorney], I'm going to relieve

you. These gentlemen don't want your services.

SMEDLEY: Thank you.

COURT: That's against my advice, once again for the record, —

SMEDLEY: It's against my advice, too.

COURT: — but they don't have to — they don't have to have an attorney.

The trial court permitted Oliver to proceed *pro se*, and standby counsel played an active role in the trial. Oliver was found guilty on all four counts and received a cumulative sentence of twenty years. He appealed his conviction on the basis of insufficiency of the evidence, and the Court of Appeals upheld it in an unpublished opinion. Denial of counsel was not an issue on appeal.

Oliver next filed a petition for relief under Ark. R. Crim. P. 37. He alleged in his petition that he was denied his Sixth Amendment right to an attorney and was forced to proceed *pro se*. He also alleged that the State withheld essential evidence (Washington's medical history) in violation of Ark. R. Crim. P. 17 and *Brady* v. *Maryland*, 373 U.S. 83 (1963), which effective counsel would have obtained. A hearing was held and following that proceeding, the trial court denied the petition and made the following finding, among others:

> 5. The defendant was not denied the effective assistance of counsel. The defendant knowingly and voluntarily elected to proceed to trial *pro se* after being cautioned extensively about doing so by the court. Competent counsel was nonetheless appointed to accompany defendant to trial, was available throughout trial and to the extent called upon by the defendant performed competently and effectively.

No specific ruling was made on whether failure to obtain Officer Washington's medical records constituted ineffective counsel. Oliver now appeals.

For his first point, Oliver argues that the trial court erred in failing to conduct an inquiry into his financial condition in connection with his ability to hire counsel and, thus, deprived him

of the right to have appointed counsel. The State's initial response is that this argument is procedurally barred because (1) it could have been raised on direct appeal, and (2) it is not an argument cognizable under Rule 37.

This court has previously considered Rule 37 appeals dealing with the issue of denial of counsel. *See Costillo* v. *State*, 292 Ark. 43, 728 S.W.2d 153 (1987) (direct appeal not perfected); *Philyaw* v. *State*, 288 Ark. 237, 704 S.W.2d 608 (1986) (direct appeal not perfected); *Leak* v. *Graves & State*, 261 Ark. 619, 550 S.W.2d 179 (1977). Here, Oliver's argument is that had the trial court inquired into his financial condition, counsel might well have been appointed for him at no expense. The implication is that he did not know that he might qualify for counsel as an indigent, and the inquiry by the court would have alerted him to that fact.

■ We are troubled by the fact that the denial of counsel under the Sixth Amendment is an issue more appropriately raised on direct appeal. *See, e.g., Deere* v. *State*, 301 Ark. 505, 785 S.W.2d 31 (1990). We can perceive of no good reason for permitting a defendant to pursue a direct appeal on unrelated grounds while saving denial of counsel for Rule 37 relief and as "insurance" in the case of an adverse appellate decision. In this case, Oliver knew what his counsel status was at trial and to the extent his Sixth Amendment rights were impaired, this should have been raised on direct appeal. Instead, Oliver contended in his direct appeal that evidence was insufficient for his conviction. This scenario should not be allowed to transpire. We hold that the issue of denial of counsel must be raised on direct appeal or be waived.

■ By the same token, the caselaw cited above more than suggests that denial of counsel may be raised in a Rule 37 petition. To the extent the cases stand for this proposition, *Costillo* v. *State*, 292 Ark. 43, 728 S.W.2d 153 (1987); *Philyaw* v. *State*, 288 Ark. 237, 704 S.W.2d 608 (1986); and *Leak* v. *Graves & State*, 261 Ark. 619, 550 S.W.2d 179 (1977) are overruled.

■ In overruling these cases, we must consider whether our requirement that this issue be raised on direct appeal should be applied prospectively. We have held that when our cases appeared to go both ways on when an appeal from a denial of a

motion to transfer to juvenile court should be taken, it would be unconscionable to deny or foreclose an appellant the right to appeal. *Hamilton* v. *State*, 320 Ark. 346, 896 S.W.2d 897 (1995). We conclude that fairness dictates a prospective application of our holding. Oliver could justifiably have relied on the cases now overruled. *See Wiles* v. *Wiles*, 289 Ark. 340, 711 S.W.2d 789 (1986). Recently, we overruled caselaw which had held that failure to preserve the issue of insufficiency of the evidence was not grounds for Rule 37 relief. *See Thomas* v. *State*, 322 Ark. 670, 911 S.W.2d 259 (1995) (per curiam). We applied the *Thomas* decision *prospectively*. We do the same in the case before us.

■■ We next turn to the merits of Oliver's first point. The Sixth and Fourteenth Amendments to the United States Constitution guarantee that any person brought to trial in any state or federal court must be afforded the fundamental right to assistance of counsel before that person can be validly convicted and punished by imprisonment. *Faretta* v. *California*, 422 U.S. 806 (1975); *Daniels* v. *State*, 322 Ark. 367, 908 S.W.2d 638 (1995); *Kincade* v. *State*, 303 Ark. 331, 796 S.W.2d 580 (1990). It is also well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. *Faretta* v. *California, supra; Daniels* v. *State, supra; Deere* v. *State*, 301 Ark. 505, 785 S.W.2d 31 (1990). But every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Daniels* v. *State, supra; Kincade* v. *State, supra; Philyaw* v. *State, supra.* The burden is on the State to show that an accused voluntarily and intelligently waived his fundamental right. *Daniels* v. *State, supra; Scott* v. *State*, 298 Ark. 214, 766 S.W.2d 428 (1989). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Daniels* v. *State, supra; Gibson* v. *State*, 298 Ark. 43, 764 S.W.2d 617, *cert. denied* 491 U.S. 910 (1989).

■ Oliver claims that he did not voluntarily and intelligently waive his right to counsel. He was forced to go to trial *pro se*, he contends, because he could not afford another attorney

and because the trial court failed to inquire into his financial condition or to inform him that he could have had counsel appointed. This court stated in *Kincade* v. *State, supra,* that the trial court must inquire of an accused's ability to retain counsel, and if the accused is an indigent, counsel must be appointed for him. Ark. R. Crim. P. 8.2. The trial court must do more than just make an inquiry. The court must explain to the accused that he is entitled, as a matter of law, to an attorney and must question him to see if he can afford to hire counsel. *Gibson* v. *State, supra.*

▇ The present case exhibits deficiencies in the necessary inquiry into the risk of Oliver's representing himself. Certainly, Oliver's financial capability to hire counsel was not explored. But one paramount feature distinguishes this case. Oliver had standby counsel throughout his trial who not only advised him but who actively represented him during most of the proceeding. With the exception of the initial cross-examination of Thomas Washington, standby counsel cross-examined each state witness. Counsel also made objections during the State's case and presented the motion for directed verdict following the State's case. As part of Oliver's defense, counsel recalled Officer Washington as his first witness and examined him, as well as the remaining six defense witnesses. Counsel also made the closing argument. Thus, it appears that early on in his trial, Oliver effectively relinquished representation to his standby counsel.

In short, this is not a case where standby counsel did nothing. *See Kincade* v. *State, supra; Philyaw* v. *State, supra.* Rather, the situation bears some similarity to *Calamese* v. *State,* 276 Ark. 422, 635 S.W.2d 261 (1982), which offers some guidance. In *Calamese,* after three continuances to allow the defendant to retain counsel, the trial court proceeded to trial, though the defendant was without counsel. The court appointed two attorneys to assist the defendant on the morning of the trial. Though the defendant was convicted, counsel performed an active role at trial. The defendant argued on appeal that the record did not reflect a voluntary or intelligent waiver. We stated:

> It is true there is nothing in the record showing the trial court made any inquiry into appellant's attempted waiver of counsel, and if she had been permitted to act as her

own counsel we would be hard-pressed to deny the argument, as the State has the burden of showing a voluntary and intelligent waiver of counsel. *Jackson* v. *State*, 249 Ark. 653, 460 S.W.2d 319 (1970), and *United States* v. *Dujanovic*, 486 F.2d 182 (1973). But we are unwilling to sustain the argument where the appellant was not left to represent herself, but was capably represented throughout the trial. Nowhere in the record does it appear that she was called on to represent herself or left unrepresented at any stage of the proceedings, trial or pretrial. Thus, the only conceivable impediment to the appellant is the fact that trial counsel were appointed for her on the morning of trial. However, no argument is offered on that score and in view of the repeated opportunities given her to employ her own counsel, which she had the means and disposition to do, we find no prejudicial error mandating another trial. The circumstances of each case must be examined in their entirety in determining whether a defendant has been adequately represented and on that basis we can reject appellant's argument. *Barnes* v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975); *Jackson* v. *State*, *supra*; *Johnson* v. *Zerbst*, 304 U.S. 458 (1938).

*Calamese*, 276 Ark. at 425, 635 S.W.2d at 262.

▇ It is true that here, unlike the situation in *Calamese*, Oliver testified at the Rule 37 hearing that he had no money to hire another attorney. He also cross-examined the first State witness himself. But following that, he took full advantage of his standby counsel by allowing him to examine witnesses, make motions and objections, and conclude with a closing argument. We admit to having serious concerns about standby counsel's being appointed the day of the trial and, thus, having no knowledge of the case, which was also the situation in *Calamese*. And, as already noted the failure of the trial court to inquire into Oliver's financial ability to hire counsel was error. Nonetheless, offsetting these concerns are two facts — (1) Oliver was adamant in wanting to proceed *pro se*, making no reference to a destitute status, and (2) counsel did more than stand by but, rather, provided active representation. There is, too, the consideration that an accused has the constitutional right to represent himself, which Oliver invoked. Under the totality of these circumstances,

though the trial court erred in not inquiring into Oliver's financial situation, we would be hard put to hold that Oliver was denied his right to counsel or that the trial court's finding on this point, following a Rule 37 hearing, was clearly erroneous. *See Wicoff* v. *State*, 321 Ark. 97, 900 S.W.2d 187 (1995); *see also Wolfs* v. *State*, 255 Ark. 97, 498 S.W.2d 878 (1973).

This case differs from our recent holding in *Daniels* v. *State*, 322 Ark. 367, 908 S.W.2d 638 (1995). In *Daniels*, the defendant had elected to represent himself with standby counsel available. After the State called its first witness, Daniels was removed from the courtroom, and his former counsel went to the trial judge's chamber and did not participate in the trial. We observed that Daniels was not represented at his trial, and there was no proof of an appropriate waiver. We further emphasized that no inquiry into the risks of proceeding *pro se* had been made. We held that it was error for Daniels to represent himself without the proper inquiry by the court. Though not determinative, we also took note of the fact that the State conceded error due to absence of counsel. Those facts are far different from what we have before us today.

Oliver next contends that his defense was hampered because the State had not furnished him information of Officer Washington's medical condition pursuant to his motion and as Ark. R. Crim. P. 17 requires. He argues that both retained counsel and standby counsel were not effective in pursuing this matter. We need not address this point. The trial court did not specifically rule on this issue when denying the petition for Rule 37 relief, and we cannot determine from the court's order whether it was considered or decided. It was Oliver's obligation to obtain a ruling on this point in order to preserve the issue for appeal. *Bowen* v. *State*, 322 Ark. 483, 911 S.W.2d 555 (1995). This was not done.

Affirmed.

DUDLEY and NEWBERN, JJ., dissent.

GLAZE, J., concurring. In my view, the appellant voluntarily, knowingly and intelligently waived his right to the assistance of counsel. Nonetheless, the trial court still appointed appellant an attorney who effectively represented him at trial. I

would affirm for these reasons alone.

ROAF, J., concurs.

ROBERT H. DUDLEY, Justice, dissenting. Appellant was charged with four felonies. He employed a succession of four attorneys, but for various reasons discharged each of them. He appeared with his fourth attorney at an omnibus hearing and informed the trial court that he wished to discharge the attorney and to represent himself. The trial court did not make a meaningful inquiry into appellant's ability to employ new counsel, did not make a full inquiry into appellant's ability to represent himself, did not determine whether appellant made a knowing and intelligent waiver of counsel, but still allowed the attorney to withdraw. The trial court stated that standby counsel would be appointed at trial, but left appellant to represent himself at the omnibus hearing. Immediately before the trial began, appellant was again left to represent himself when the trial court heard and granted the State's motions to quash subpoenas issued on behalf of appellant. As the trial began, the trial court appointed standby counsel. There has been no showing by the State that standby counsel had notice that he was going to be appointed, that he investigated the case, interviewed witnesses, or discussed the case with appellant. The record does not show that standby counsel participated in *voir dire* or the selection of the jury. Appellant personally conducted cross-examination of the State's first and most important witness. Subsequently, standby counsel represented appellant. Appellant was convicted and sentenced for each of the four felonies. He filed a petition for postconviction relief. The trial court denied relief and the majority opinion affirms the denial of relief. I dissent.

In his first point of appeal, appellant contends that the trial court (1) failed to question him about his ability to employ counsel and (2) failed to fully explain the disadvantages of representing himself, and, as a consequence, he did not knowingly and intelligently waive assistance of counsel. The argument has merit.

We recently decided a case with facts that are comparable to the case at bar. In *Daniels v. State*, 322 Ark. 367, 908 S.W.2d 638 (1995), the defendant and his attorney appeared before the trial court, and the defendant informed the trial court that he

wished to represent himself. The trial court stated, "I think it's a mistake not having Mr. Gibbons [counsel] with you there, but that's your decision" and "there are procedures that we are going to follow that I suppose you don't understand in selecting a jury." *Id.* at 370, 908 S.W.2d at 639. The trial court informed the defendant that his counsel would remain available, but allowed the defendant to represent himself. *Id.* The defendant represented himself through jury selection and until the State's first witness was called. At that time, the defendant became unruly and was removed from the courtroom. In reversing because the defendant did not knowingly and intelligently waive his right to counsel we wrote:

> The Sixth and Fourteenth Amendments to the Constitution of the United States guarantee that any person brought to trial in any state or federal court must be afforded the fundamental right to assistance of counsel before he can be validly convicted and punished by imprisonment. *Faretta* v. *California,* 422 U.S. 806 (1975); *Kincade* v. *State,* 303 Ark. 331, 796 S.W.2d 580 (1990). It is well established that an accused may make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. *Deere* v. *State,* 301 Ark. 505, 785 S.W.2d 31 (1990). However, every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Kincade* v. *State, supra; Philyaw* v. *State,* 288 Ark. 237, 704 S.W.2d 608 (1986). The burden is upon the state to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Scott* v. *State,* 298 Ark. 214, 766 S.W.2d 428 (1989).

> In *Faretta* v. *California, supra,* the United States Supreme Court stated that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (quoting *Adams* v. *United States ex rel. McCann,* 317 U.S. 269 (1942)). In *Gibson* v. *State,* 298 Ark. 43, 764 S.W.2d 617, *cert.*

*denied* 491 U.S. 910 (1989), we relied upon *Patterson* v. *Illinois*, 487 U.S. 285 (1988), to conclude that the constitutional minimum for a knowing and intelligent waiver of the right to counsel requires that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. Further, we have stated that determining whether an intelligent waiver of the right to counsel has been made depends in each case upon the particular facts and circumstances, including the background, the experience and conduct of the accused. *Gibson* v. *State, supra.* To establish a voluntary and intelligent waiver, the trial judge must explain to the accused that he is entitled as a matter of law to an attorney and question him to see if he can afford to hire counsel. *Id.* The judge must also explain the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney. *Id.* The last requirement is especially important since a party appearing *pro se* is responsible for any mistakes he makes in the conduct of his trial and receives no special consideration on appeal. *Id.*

The appellant was not represented by counsel at his trial and there is no showing on the record that he knowingly and intelligently waived this right. The trial court commented that the appellant appeared to be well versed in the law; however, no real inquiry was made. In fact, the state concedes there was no inquiry. The trial court did not explain the risks or the consequences of proceeding without counsel. *See Gibson* v. *State, supra; Murdock* v. *State,* 291 Ark. 8, 722 S.W.2d 268 (1986). Accordingly, we hold the trial court erred by allowing the appellant to represent himself without making a proper inquiry as required by *Faretta* v. *California, supra.*

*Daniels* v. *State,* 322 Ark. at 372-73, 908 S.W.2d at 640-41.

The concurring opinion agreed. It provides that the trial judge was "required to ensure appellant knowingly and intelligently waived counsel, once appellant terminated counsel and chose to represent himself." *Daniels* v. *State,* 322 Ark. 367, 375, 908 S.W.2d 638, 642 (1995) (Glaze, J., concurring).

The same reasoning is applicable to the case at bar. Here, there was no inquiry into appellant's ability to employ counsel, no inquiry into his background or experiences, and no inquiry into his familiarity with criminal law. The record does not reflect that defendant knew what he was doing or that he was aware of the dangers of self-representation. Indeed, the State, in its brief, refers to the adage that one who represents himself has a fool for a client. In sum, the record does not show that defendant knowingly and intelligently waived his fundamental right of assistance of counsel.

The majority opinion admits, "The present case exhibits deficiencies in the necessary inquiry into the risk of Oliver's representing himself," and "We admit to having serious concerns about standby counsel's being appointed the day of the trial and, thus, having no knowledge of the case. . . ." It further admits, "[T]he failure of the trial court to inquire into Oliver's financial ability to hire counsel was *error*." (Emphasis supplied.) Thus, the majority opinion admits that the trial court committed two Sixth Amendment errors involving right to counsel, but, under a totality-of-the-circumstances test, affirms the trial court. The majority opinion reaches the wrong result because it applies the wrong standard.

It is now well settled that Sixth Amendment violations that cast doubt on the fairness of the entire trial process can never be considered harmless. *See Holloway* v. *Arkansas*, 435 U.S. 475 (1978) (conflict of interest in representation throughout the proceeding); *Gideon* v. *Wainwright*, 372 U.S. 335 (1963) (deprivation of counsel throughout the proceeding); *White* v. *Maryland*, 373 U.S. 59 (1963) and *Hamilton* v. *Alabama*, 368 U.S. 52 (1961) (absence of counsel from arraignment proceeding that affected the entire trial). The *Chapman* harmless-error test could not be applied in the foregoing cases because the scope of the violation could not be discerned from the record, and any inquiry into its effect on the outcome of the case would be purely speculative. *Satterwhite* v. *Texas*, 486 U.S. 249 (1988).

The *Chapman* harmless-error test is authorized only in those Sixth Amendment cases where the violation is limited to the admission of evidence obtained without counsel. *Satterwhite* v. *Texas*, 486 U.S. 249 (1988). The error in this case involves

more than the admission of evidence. Indeed, the majority opinion confesses that the trial court committed errors involving inquiry about, and appointment of, counsel. It is settled that such error cannot be considered harmless, and there is no authority for the totality-of-the-circumstances test utilized in the majority opinion. Reversal and remand is mandated under the Sixth Amendment cases decided by the Supreme Court.

NEWBERN, J., joins in this dissent.