Arthur BLEDSOE, Jr. *v.* STATE of Arkansas

CR 97-1160                                989 S.W.2d 510

Supreme Court of Arkansas
Opinion delivered May 6, 1999

*Dana R. Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Arthur Bledsoe, Jr., was convicted of rape and sentenced to life in prison. He appeals on six different points: (1) that the trial court failed to obtain a knowing and intelligent waiver of the right to counsel; (2) that the trial court erred by refusing to allow the defendant to cross-examine the victim with respect to prior sexual conduct; (3) that the trial court erred by allowing testimony that Mr. Bledsoe was in possession of crack cocaine and drug paraphernalia at the time of his arrest; (4) that the trial court

erred in allowing testimony regarding the Heaton burglary; (5) that the trial court erred in allowing testimony regarding the Godsey burglary; (6) that the trial court erred in allowing testimony regarding the Rogaisis burglary. Because we find merit in Mr. Bledsoe's first point, we reverse the conviction.

During the early morning hours of July 11, 1996, Ms. Jennifer Gann was forcibly raped when a man entered her home through a back window and threatened her with a gun. Mr. Bledsoe's fingerprints were recovered from a window screen and DNA evidence was consistent with the allegation that Mr. Bledsoe was the perpetrator. Also on July, 11, 1996, Mr. Robert Godsey discovered that a Harrington & Richmond .22 caliber pistol with a long barrel and brown scabbard had been stolen from his home along with jewelry, a VCR, and a pink flashlight.

On the evening of July 12, 1996, a grocery store owned by Ms. Louise Heaton was broken into and several cartons of cigarettes, six-packs of beer, candy, cookies, and cigarette lighters were stolen. The investigation of these burglaries led police to Mr. Aaron Allen, who told the police that he purchased a .22 caliber gun from Mr. Bledsoe for $30 one week after the rape occurred. The gun was identified as that stolen during the Godsey burglary. Other evidence recovered by the police during the rape investigation linked Mr. Bledsoe to yet another burglary.

On July 16, 1996, Mr. Bledsoe was arrested by Officer Tom Lewis. Officer Lewis discovered a small black film canister of crack cocaine, a small metal wire "poker," and what he believed to be a crack pipe in Mr. Bledsoe's possession at the time of his arrest.

Mr. Bledsoe was charged with rape in the Mississippi County Circuit Court. Initially, Mr. Bledsoe retained a private attorney, Ms. P.J. Maddox-Cook, to represent him in connection with the rape charge. After Ms. Maddox-Cook withdrew from the case, the trial court appointed the Mississippi County Public Defender, Mr. Dana Davis, to represent Mr. Bledsoe. Just before the trial began on June 2, 1997, Mr. Bledsoe informed Mr. Davis and the court that he wished to represent himself. The trial court then proceeded to warn Mr. Bledsoe that he would be required to fol-

low all of the rules and procedures of court and that this would most likely be difficult for him given his lack of formal legal education. The trial court further advised him that the public defender could take the trial from beginning to end if he so desired. Mr. Bledsoe persisted in his request to represent himself. The trial court then instructed Mr. Davis to stand by and assist during the trial and granted Mr. Bledsoe permission to proceed *pro se.*

During the trial, Mr. Bledsoe cross-examined all but one of the State's witnesses and examined all of his own witnesses. Mr. Bledsoe also responded to the court's inquiries during bench conferences and made the closing argument. Mr. Bledsoe's standby attorney, Mr. Davis, handled the preliminary aspects of the trial including voir dire and the opening statement, and he participated in a hearing on a pretrial motion to admit evidence of consensual sexual conduct by the victim. Mr. Davis also cross-examined one of the State's witnesses, reviewed the jury instructions, and handled the sentencing phase of the trial. After a four-day trial, the jury found Mr. Bledsoe guilty of rape and sentenced him to life imprisonment.

It is well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. *See Akins v. State,* 330 Ark. 228, 955 S.W.2d 483 (1997). A defendant may proceed *pro se* in a criminal case when: (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver of the right to counsel; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo v. State,* 336 Ark. 275, 984 S.W.2d 801 (1999).

### I.  Waiver of the Right to Counsel

Mr. Bledsoe argues on appeal that he did not knowingly and intelligently waive his constitutional right to counsel. In order to effectively waive the right to counsel, the accused must "be made aware of the dangers and disadvantages of self-represen-

tation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)). To establish a voluntary and intelligent waiver, the trial judge must inform the accused that he is entitled to an attorney as a matter of law and question him to determine if he can afford to hire a lawyer. *Mayo, supra*. The trial judge must also explain the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney. *Id.*; *see also Akins, supra*. Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996); *Daniels v. State*, 322 Ark. 367, 908 S.W.2d 638 (1995); *Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Akins, supra; Oliver, supra*. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Scott v. State*, 298 Ark. 214, 766 S.W.2d 428 (1989).

After the trial court was informed that Mr. Bledsoe wanted to proceed *pro se*, the following colloquy occurred:

> COURT: Mr. Bledsoe, I've been told that you want to represent yourself; is that correct?
>
> DEFENDANT: Yes, sir.
>
> COURT: Do you understand that I'll expect you to follow all the rules and procedures of court which you're probably not familiar with, do you understand that?
>
> DEFENDANT: Yes, sir.
>
> COURT: All right. That's why Mr. Davis has been appointed to aid and assist you on any rules and procedures and to do whatever you want him to assist you. I will let you defend yourself which you have a constitutional right to do if you choose, but I'm not

going to let you represent yourself without a lawyer sitting there with you to aid and assist you; do you understand?

DEFENDANT: Yes, sir.

COURT: All right. So you'll be expected to adhere to all the rules, all the orders of the Court; do you understand that?

DEFENDANT: Yes, sir.

\* \* \*

COURT: All right. I just want to be sure you understand. Mr. Davis is the public defender and he can take the case from beginning to end if you want him to.

DEFENDANT: (*Nodding.*)

COURT: If you are dead set on representing yourself, I'm going to let you do it.

DEFENDANT: (*Nodding.*)

COURT: But I expect you to follow the rules and procedures, and he's there to advise you on that or to do anything you need him to do or want him to do; do you understand?

DEFENDANT: Yes, sir.

COURT: All right.

PROSECUTOR: One thing for the record — the State has made an offer that on a plea to rape as sentence to 35 years. In fact that would probably be tied in with the other burglary charges for that matter, but that the State could offer 35 years on a plea to the rape charge and the burglaries tied in with it. And it's my understanding that the defendant has rejected that. I want that on the record because it won't — the offer won't be available after we start to pick a jury.

COURT: As I understand what the prosecutor's saying, Mr. Bledsoe, is that you're being offered a 35-year sentence to plead guilty to the rape and the burglaries which would wipe out all the present charges against you. So that's a decision you have to make.

DEFENDANT: (*Nodding.*)

COURT: Okay?

DEFENDANT: Yes, sir.

COURT: And you're saying, Mr. Davis [prosecutor], once we start the case you're going to withdraw the offer?

PROSECUTOR: That's correct.

MR. DAVIS [STANDBY COUNSEL]: And you do not wish to accept the offer?

DEFENDANT: No.

■ The record does not reflect that the trial court advised Mr. Bledsoe of the dangers and disadvantages of proceeding without an attorney. While Mr. Bledsoe was informed several times about the requirement that he follow the rules and procedures of court, he was given no explanation as to the consequences of failing to comply with those rules, such as the inability to secure the admission or exclusion of evidence, or the failure to preserve arguments for appeal. There was simply no discussion about the substantive risks of proceeding without counsel. Furthermore, the reference to the State's offer of a thirty-five-year sentence on a plea of guilty to the rape and burglary charges did not include a full disclosure about the range of penalties Mr. Bledsoe faced on any of the charges. Finally, notwithstanding any inference suggested by the trial court's statement that the public defender "can take the case from beginning to end if you want him to," Mr. Bledsoe was not informed explicitly of his constitutional right to an attorney, nor was any inquiry made as to his ability to afford an attorney. We therefore conclude that Mr. Bledsoe did not knowingly and intelligently waive his right to counsel.

## II. Assistance of Counsel — Participation by Standby Counsel

The State asserts that even if the trial court's inquiry failed to establish Mr. Bledsoe's knowing and intelligent waiver of counsel, there is no reversible error because Mr. Bledsoe effectively relinquished representation to his standby counsel, Mr. Davis. We do not agree.

▮ The assistance of standby counsel can rise to a level where the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *See Oliver, supra; Calamese v. State,* 276 Ark. 422, 635 S.W.2d 261 (1982). Whether or not such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. *See Oliver, supra; Wicoff v. State,* 321 Ark. 97, 900 S.W.2d 187 (1995). Our cases on this issue demonstrate that the assistance must be substantial, such that counsel was effectively conducting a defense. *See Oliver, supra; Calamese, supra.*

In *Calamese, supra,* there was no evidence of any inquiry by the trial court into the appellant's attempted waiver of counsel, but we determined that the appellant had been effectively represented at trial by the attorney appointed to assist her. We noted that the attorney "immediately assumed a fully active role as trial attorney, conducting the entire interrogation, cross-examination, making objections to evidence and exhibits, presenting a defense with numerous exhibits and four defense witnesses, including eliciting lengthy testimony from the defendant and making a forceful closing argument, all of which was done with evident familiarity." *Id.* Under those facts, we held that appellant was not left to represent herself at any stage of the proceedings, and she was not denied her right to counsel. *Id.*

Similarly, in *Oliver, supra,* no effective waiver was obtained when the defendant elected to proceed *pro se* and standby counsel was appointed to assist during trial. As in *Calamese,* we affirmed the conviction where, with the exception of the defendant's cross-examination of the first State witness, standby counsel cross-examined each State witness, made objections during the State's case, and presented a motion for directed verdict at the conclusion of the State's case. *Id.* Further, standby counsel recalled the State's first witness and examined him as well as the remaining six defense witnesses. *Id.* Counsel also made the closing argument. *Id.* Under such circumstances, we held that the defendant was not denied his right to counsel because standby counsel not only advised the defendant but "actively represented him during *most* of

the proceeding," and the defendant "effectively relinquished representation to his standby counsel" early in the trial. *Id.* (emphasis added).

■ The facts here are distinguishable from those in *Calamese* and *Oliver* in that the appointed counsel in this case did not actively participate in Mr. Bledsoe's defense during most of the trial. The record shows that Mr. Bledsoe cross-examined twenty-four of the State's twenty-five witnesses, and examined all of the defense witnesses. Furthermore, Mr. Bledsoe raised and argued the only substantive objections during the trial and presented his own closing argument. In contrast, Mr. Davis cross-examined only one of the State's witnesses, raised no objections to evidence or exhibits, and participated in one bench conference. While Mr. Davis conducted voir dire, and gave the opening statement, he "effectively relinquished" representation to Mr. Bledsoe once the State began to call its witnesses. Mr. Davis's participation level increased again at the close of the trial when he reviewed the jury instructions and handled the sentencing phase. In short, Mr. Bledsoe was left to represent himself during the State's case-in-chief and during the presentation of his defense. Under these circumstances, we must conclude that Mr. Davis did not actively represent Mr. Bledsoe during most of the proceeding. We therefore hold that Mr. Bledsoe was denied his right to counsel.

Because we are reversing on Mr. Bledsoe's first point on appeal, it is unnecessary for us to address the merits of his remaining points.

Reversed and remanded.

ARNOLD, C.J., and CORBIN, J., dissent.

W H. "DUB" ARNOLD, Chief Justice, dissenting. I disagree with the statement of the majority concluding that Mr. Bledsoe did not knowingly and intelligently waive his right to counsel. The colloquy between the trial court and Mr.

Bledsoe set forth on pages five and six of the majority opinion[1] reveals that Mr. Bledsoe wanted to represent himself and that the trial judge took every precaution to protect the defendant's constitutional rights.

This court has stated that the determination in each case of whether a waiver is intelligently made depends upon the particular facts and circumstances. *Philyaw v. State*, 288 Ark. 237, 704 S.W.2d 608 (1986). The record in this case is very clear that the defendant insisted that he represent himself and that he understood that he would have to follow the rules and procedures and orders of the court. Even then, the court would not allow the public defender to withdraw from the case. It is undisputed that the public defender did assist the defendant in the trial of the case.

The defendant exercised his constitutional right to represent himself. What he did not like was the outcome of the trial. The courts have protected a defendant's constitutional rights to represent himself, to have an appointed attorney, to hire his own attorney, to not have an appointed attorney represent him against his own will, and to represent himself with the aid of an appointed attorney. The one thing the court cannot guarantee is that the defendant will be satisfied with the results after he has made his choice.

Judge Burnett did everything possible to protect Mr. Bledsoe's constitutional rights; therefore, this case should be affirmed.

CORBIN, J., joins dissent.

---

[1] *Reporter's note*: The page references are to the Supreme Court's slip opinion; see 337 Ark. at 407-09, 989 S.W.2d at 513.