Cite as 2020 Ark. App. 410

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-676

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** September 16, 2020 |
| MICHAEL HULL | | APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, EASTERN DISTRICT [NOS. 11PCR-17-111 & 11PCR-18-7] |
| | APPELLANT | |
| V. | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| STATE OF ARKANSAS | | MOTION TO WITHDRAW DENIED; REBRIEFING ORDERED |
| | APPELLEE | |

## LARRY D. VAUGHT, Judge

Michael Hull appeals from two April 29, 2019 sentencing orders revoking his probation in case Nos. CR-2017-111 and CR-2018-7. His attorney filed a no-merit brief and a motion to withdraw as counsel in both cases pursuant to Rule 4-3(k) (2020) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Anders v. California*, 386 U.S. 738 (1967), and asserts that there is no meritorious issue to argue on appeal.[1] Hull was notified of his right to file pro se points for reversal, but he has not filed any such points. As a consequence, the State has not filed a brief in response. Because there is arguable merit on the issues of whether Hull knowingly and intelligently waived his right to counsel and whether Hull effectively

---

[1]This case has returned to us after rebriefing. In *Hull v. State*, 2020 Ark. App. 196, at 1–2, we denied counsel's motion to withdraw and ordered rebriefing because Hull's counsel's no-merit brief failed to address all adverse rulings in violation of *Anders* and Rule 4-3(k).

relinquished his representation to standby counsel, we hold that it is not appropriate to dispose of this case with a no-merit appeal. We therefore deny counsel's motion to withdraw and order that this case be briefed on the merits.

Hull pled guilty on April 3, 2018, to possession of drug paraphernalia in case No. CR-2017-111 and to possession of methamphetamine in case No. CR-2018-7, both Class D felonies, and received a five-year term of supervised probation for each offense, to run concurrently. On August 15, the State filed a petition to revoke Hull's probation in both cases alleging three violations: (1) Hull possessed methamphetamine on July 18, 2018; (2) he possessed drug paraphernalia on July 15, 2018; and (3) he possessed a weapon on July 18, 2018. In January 2019, the State filed an amended petition to revoke alleging four additional violations: (1) Hull failed to report to his supervising officer within twenty-four hours after being released from incarceration on October 8, 2018; (2) he moved from his residence without permission; (3) he failed to pay court costs; and (4) he failed to pay probation-supervision fees.

At the revocation hearing only two witnesses testified. The first was Sam Poole of the Piggot Police Department, who stated that on April 4, 2019, a probation search of Hull's home revealed needles, one having a clear substance in it that field tested positive for methamphetamine; and gabapentin pills, which Poole testified is a substitute for methamphetamine and tests positive for methamphetamine. Officer Poole testified that a woman named Amanda Hackworth was at Hull's home and that Hull admitted the needles were his.

Justin Barnes, Hull's probation officer, testified that Hull failed to report to probation on May 16 and July 18, 2018; a probation search of Hull's home on July 18, 2018, revealed a baggie that contained a small amount of methamphetamine, a glass pipe containing a white powdery substance, and a KA-BAR fixed blade knife and that Hackworth was in the home; Hull admitted that items found in his home were his; Hull admitted using methamphetamine on April 23, 2019, and tested positive for marijuana the morning of the revocation hearing (April 29, 2019); Hull owed $1,500 in fines to the Clay County Sheriff's Office; and Hull owed $150 in probation-supervision fees.

At the conclusion of the hearing, the circuit court revoked Hull's probation, finding that he failed to report, he failed to pay his financial obligations, he tested positive for drugs, drugs and drug paraphernalia were located during two probation searches of his home, and he was living with a known felon. The circuit court sentenced Hull to two five-year terms of imprisonment, to run consecutively. In this no-merit appeal, Hull's counsel addresses three adverse rulings and argues that there is no merit to an appeal of those rulings.

The first adverse ruling occurred at the onset of the revocation hearing when Hull stated to the court: "I am dismissing [Kirk Lonidier] as my attorney. If I have to, I guess I will do it myself, but I do not want him." Hull requested one hour to call another attorney. The court asked Hull, "Why in the world would you want to represent yourself, and why should I allow you to?" Hull answered that he did not want to represent himself. He said that he had talked to another lawyer but did not pay him. The court then asked Hull about his educational background, to which Hull responded "high school." The court asked about Hull's court experience, and Hull said, "None, except for TV." The court asked Hull if he had ever had a

3

trial or a hearing, and Hull said no. Thereafter, the circuit court stated that it was denying Hull's request to relieve his appointed counsel. However, it effectively granted the motion and appointed Lonidier to serve as standby counsel. The court instructed Lonidier to sit at the counsel table with Hull, told Hull that Lonidier will advise Hull and answer any of Hull's questions, advised Hull that he will make the decisions, and urged Hull not to take this step.

In response, Lonidier asked for a bench conference, wherein he asked: "Do you - - just to make sure I understand. Do you want him to examine the witnesses or me just tell him what to ask, or do you want me to . . . " The circuit court interrupted:

> There is a list of questions to go through to determine if someone is to represent themselves or not. . . . And I have the thought to have the public defender available to assist him. I mean, the man has got a high school education. I made it clear to him that, you know, it's not like TV, and I have not dismissed you. . . . So you should render him whatever assistance he will allow you to render him.

During the hearing, Hull did not ask any questions of the State's first witness, and Lonidier stated that he was instructed by Hull not to ask any questions. The court reminded Hull that Lonidier was there to help with the rules of evidence, and Hull responded that he did not know what questions to ask. The court again stated that "people shouldn't represent themselves in court" and that Hull "should either be an active participant . . . or . . . allow Mr. Lonidier to do that for you." After the testimony of the State's second witness, Hull asked no questions and instructed Lonidier not to ask any questions. The State rested. Lonidier advised the court that Hull had no witnesses and did not want to testify.

In this no-merit appeal, Hull's counsel first argues that the circuit court was correct in allowing Hull to proceed pro se. The right of a criminal defendant to proceed pro se was delineated in *Faretta v. California*, 422 U.S. 806 (1975), where the Supreme Court held that "in

4

order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits [traditionally associated with the right to counsel]." *Hatfield v. State*, 346 Ark. 319, 324–25, 57 S.W.3d 696, 700 (2001) (citing *Faretta*, 422 U.S. at 835). The Supreme Court further stated that although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Hatfield*, 346 Ark. at 325, 57 S.W.3d at 700 (citing *Faretta*, 422 U.S. at 835; *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)). In *Faretta*, the Court also concluded that a defendant's technical legal knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself. *Hatfield*, 346 Ark. at 325, 57 S.W.3d at 700 (citing *Faretta*, 422 U.S. at 836).

Likewise, the Arkansas Supreme Court has long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. *Id.*, 57 S.W.3d at 700. Furthermore, our supreme court has held that the circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Id.*, 57 S.W.3d at 700. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, and the burden is on the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Id.*, 57 S.W.3d at 700. Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Id.*, 57 S.W.3d at 700.

A criminal defendant may invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Id.*, 57 S.W.3d at 700. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Id.* at 325–26, 57 S.W.3d at 700. The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. *Id.* at 326, 57 S.W.3d at 700–01 (citing *Scott v. State*, 298 Ark. 214, 766 S.W.2d 428 (1989) (quoting *Patterson v. Illinois*, 487 U.S. 285 (1988))).

In *Daniels v. State*, 322 Ark. 367, 373, 908 S.W.2d 638, 640–41 (1995), our supreme court reversed and remanded for a new trial because the appellant was not represented by counsel at his trial, there was no showing on the record that he knowingly and intelligently waived this right, and the circuit court did not explain the risks or the consequences of proceeding without counsel. Similarly, in *Gibson v. State*, 298 Ark. 43, 47, 764 S.W.2d 617, 619 (1989), the supreme court reversed and remanded because at no time did the circuit court determine that Gibson made an intelligent waiver by explaining the risks or the consequences of proceeding without counsel.

Considering the caselaw and the record before us, we are concerned with the adequacy of the circuit court's admonition to Hull relating the risks and dangers of proceeding pro se.

6

While the circuit court inquired about Hull's educational background and hearing experience, there is little evidence that the circuit court explained to Hull the risks or consequences of proceeding without counsel. Our review of the record reveals the court made two admonitions to Hull. First, after the court had already ruled on Hull's request to relieve his counsel but before the first witness was called to testify, the circuit court stated to Hull, "I urge you not to take this step." And during the hearing, the circuit court stated that "people shouldn't represent themselves in court." These two comments are arguably insufficient explanations to Hull of the risks and dangers of proceeding without representation. Therefore, we hold that the issue of whether Hull knowingly and intelligently waived his right to counsel is not a wholly frivolous one.

Hull's counsel argues that any deficiencies in the circuit court's *Faretta* inquiry were rendered moot by Lonidier's "effective defense." The assistance of standby counsel can rise to a level that the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *Bledsoe v. State*, 337 Ark. 403, 410, 989 S.W.2d 510, 514 (1999). Whether such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. *Id.*, 989 S.W.2d at 514. Our cases on this issue demonstrate that the assistance must be substantial, such that counsel was effectively conducting a defense. *Id.*, 989 S.W.2d at 514.

In *Calamese v. State*, 276 Ark. 422, 635 S.W.2d 261 (1982), there was no evidence of any inquiry by the circuit court into the appellant's attempted waiver of counsel, but the supreme court determined that the appellant had been effectively represented at trial by appointed standby counsel. There, standby counsel, with evident familiarity, immediately assumed a fully

7

active role as trial attorney. Counsel conducted the entire interrogation and cross-examination; he made objections to evidence and exhibits; he presented a defense with numerous exhibits and four defense witnesses, including eliciting lengthy testimony from the defendant; and made a forceful closing argument. *Id.* at 424, 635 S.W.2d at 262. Under those facts, it was held that the appellant was not left to represent herself at any stage of the proceedings and that she was not denied her right to counsel. *Id.* at 425, 635 S.W.2d at 262.

Similarly, in *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996), no effective waiver was obtained when the defendant elected to proceed pro se and standby counsel was appointed to assist during trial. Nevertheless, the supreme court affirmed the conviction because, with the exception of the defendant's cross-examination of the first State witness, standby counsel cross-examined each State witness, made objections during the State's case, presented a motion for directed verdict at the conclusion of the State's case, recalled the State's first witness and examined him as well as the remaining six defense witnesses, and made closing argument. *Id.* at 750, 918 S.W.2d at 693. Under such circumstances, the supreme court held that the defendant was not denied his right to counsel because standby counsel actively represented him during most of the proceeding and that the defendant effectively relinquished representation to his standby counsel early in the trial. *Id.*, 918 S.W.2d at 693.

There is an argument to be made that the facts in the case at bar are distinguishable from those in *Calamese* and *Oliver.* Here, standby counsel did nothing at Hull's hearing—Hull instructed him not to question the witnesses. Under these circumstances, we cannot agree with counsel that there is no merit to the argument that Lonidier actively represented Hull during the proceeding sufficient to overcome the deficiencies in the circuit court's *Faretta* inquiry.

8

In conclusion, we hold that counsel has failed to show that an appeal of Hull's sentencing orders revoking his probation in case Nos. CR-2017-111 and CR-2018-7 would be wholly frivolous. Accordingly, we deny counsel's motion to withdraw and order rebriefing in adversarial form on the issues of whether Hull knowingly and intelligently waived his right to counsel and whether Hull effectively relinquished representation to his standby counsel. In addition, counsel should also address how any ruling in Hull's favor on these issues would affect another adverse ruling—the denial of Hull's motion for a continuance.

Motion to withdraw denied; rebriefing ordered.

GRUBER, C.J., and MURPHY, J., agree.

*Skarda & Lonidier, P.L.L.C.*, by: *Kirk B. Lonidier*, for appellant.

One brief only.

9