2010 Ark. App. 430

**Donnell ROBINSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1206.**

Court of Appeals of Arkansas.

May 19, 2010.

Gene E. McKissic, Jackie B. Harris, McKissic & Associates, PLLC, Pine Bluff, AR, for appellant.

Dustin McDaniel, Attorney General, Karen Virginia Wallace, Assistant Attorney General, Little Rock, AR, for appellee.

LARRY D. VAUGHT, Chief Judge.

Donnell Robinson was convicted of committing a terroristic act and being a felon in possession of a firearm. He was sentenced to two consecutive thirty-year terms of imprisonment and ordered to pay a $10,000 fine. On appeal, Robinson argues that (1) the trial court erred in finding that he waived his right to counsel, (2) the trial court denied his Sixth Amendment right to counsel by denying his motion for a continuance and failing to render a timely ruling on his oral motion to dismiss his appointed counsel, (3) the prosecutor's closing arguments were prejudicial and denied him a fair trial, (4) reversible error occurred when evidence of a 1994 conviction was introduced, and (5) the trial court erred in permitting the jury to consider a sentencing enhancement. We hold that Robinson's first point has merit; therefore, we reverse and remand.

On April 6, 2008, several individuals witnessed Robinson walk over to a vehicle being driven by Joe Allen Plummer and fire a gun at it several times. After he was arrested, Robinson was appointed a public defender, and a jury trial was scheduled for December 2008. At some point, another public defender, Joseph Mazzanti, III, assumed representation of Robinson. Due to a conflict with Mazzanti's schedule, the jury trial was reset for February 2009.

At a pre-trial hearing, Robinson requested a ninety-day continuance to hire a different lawyer based on his dissatisfaction with Mazzanti. The trial court denied Robinson's request. The February jury trial was thereafter twice continued at the request of the State, with a resulting trial date of April 28, 2009. At a pre-trial hearing on April 13, 2009, Robinson again requested additional time to hire his own attorney. He stated that if he, or his mother, could not hire an attorney, he would represent himself. The trial court took the matter under advisement. On April 28, 2009, during a pre-trial in camera hearing, the trial court found that Robinson waived his right to counsel, granted Robinson's motion to represent himself, and appointed Mazzanti as stand-by counsel. The jury trial went forward, and Robinson handled every aspect of the proceed-

ing—except for Mazzanti's questioning of Robinson. The jury convicted Robinson.

Robinson's first point on appeal is that the trial court erred in finding that he made an effective waiver of his right to counsel. The Sixth Amendment of the United States Constitution, made obligatory on the States by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Gideon v. Wainwright*, 372 U.S. 335, 342–44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 2, section 10, of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. *Barnes v. State*, 258 Ark. 565, 568, 528 S.W.2d 370, 373 (1975). No sentence involving |₃loss of liberty can be imposed where there has been a denial of counsel. *White v. State*, 277 Ark. 429, 432, 642 S.W.2d 304, 306 (1982). On the other hand, a criminal defendant has a right to represent himself at trial where his waiver of the right to counsel is knowingly and intelligently made. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Supreme Court of the United States has addressed the right of a criminal defendant to conduct his own defense as follows:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will estab-

> lish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835, 95 S.Ct. 2525 (internal citations omitted).

A defendant may proceed pro se in a criminal case when (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Bledsoe v. State*, 337 Ark. 403, 406, 989 S.W.2d 510, 512 (1999). Our standard of review is whether the trial court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Pierce v. State*, 362 Ark. 491, 497, 209 S.W.3d 364, 367 (2005). Robinson argues that his right-to-counsel waiver was not unequivocal, knowing, or intelligent.

Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, |₄and the conduct of the accused. *Bledsoe*, 337 Ark. at 407, 989 S.W.2d at 512. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Id.*, 989 S.W.2d at 512. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *Id.*, 989 S.W.2d at 512–13. The burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Hatfield v. State*, 346 Ark. 319, 325, 57 S.W.3d 696, 700 (2001).

The "constitutional minimum" for determining whether a waiver was know-

ing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel. *Hatfield,* 346 Ark. at 326, 57 S.W.3d at 700–01 (emphasis added). In *Bledsoe,* our supreme court wrote:

> The record does not reflect that the trial court advised Mr. Bledsoe of the dangers and disadvantages of proceeding without an attorney. While Mr. Bledsoe was informed several times about the requirement that he follow the rules and procedures of court, he was given no explanation as to the consequences of failing to comply with those rules, such as the inability to secure the admission or exclusion of evidence, or the failure to preserve arguments for appeal. There was simply no discussion about the substantive risks of proceeding without counsel.

337 Ark. at 409, 989 S.W.2d at 513. Similarly, in *Parker v. State,* this court reversed because the trial court "did not make an inquiry as to [the defendant's] understanding of the legal process, and it did not *specifically* warn [him] of the *substantive* risks of proceeding without counsel." 93 Ark. App. 472, 480, 220 S.W.3d 238, 246 (2005) (emphasis in original).

At two pre-trial hearings, Robinson requested additional time to hire his own attorney and stated that if he was denied the request he would represent himself. On the day of trial, the trial court granted Robinson's request, stating that "there are certain rules that you will be required to follow, Rules of Criminal Procedure." The trial court proceeded toward trial when the prosecutor requested that the court "get some stuff on the record" to "prove that the Defendant knowingly waived his right to counsel." The following colloquy took place:

PROSECUTOR: It's my understanding that it is your desire to represent yourself, correct?

DEFENDANT: Yes.

PROSECUTOR: That you want to represent yourself?

DEFENDANT: Yes, sir.

PROSECUTOR: It's not that you want another attorney, you want, you, Donnell Robinson, want to represent yourself, correct?

DEFENDANT: I wouldn't mind having another attorney, but I asked and the Judge said he didn't know if he would permit that or not. So what could I do?

PROSECUTOR: [To the trial court] ... That's what we have to have, an unequivocal request to proceed pro se.... It can't be, "I just don't like Mazzanti.... I want whoever." It's got to be, "I want to represent myself," is what we have to have.

DEFENDANT: Well, I can't say that. I want to represent myself in a way if I can't have me no other lawyer I'd rather represent myself.

THE COURT: Okay.

DEFENDANT: Because you said you didn't know if you was going to give me time and all this to do. So, hey, all I can, well, hey if the Judge don't allow me time I will have to represent myself.

. . .

THE COURT: So is it your desire to represent yourself. Is that it?

DEFENDANT: If I can't get another lawyer, yes, sir....

The trial court moved forward with preliminary trial matters when the prosecutor again intervened:

PROSECUTOR:—being that the Court's ruled that [Robinson] made an unequivocal request to proceed pro se.... [T]he Court should inquire and

question as to the background, experiences and conduct of the defendant. I think what the Court's wanting to do is make sure the defendant can read, write, and just inquire as to whether or not he's ever proceeded pro se in a matter before, but just to make sure he has some education in which to make a knowing waiver of his rights.

DEFENDANT: Would you tell me what pro se means?

PROSECUTOR: Proceed on your own without an attorney.

THE COURT: How much schooling have you completed?

DEFENDANT: Eleventh.

THE COURT: Do you read and write and understand the English language?

DEFENDANT: Mostly. Not a lot of big words, but I look them up.

THE COURT: Okay. The Court finds that he has knowingly and intelligently made a decision to represent himself.

PROSECUTOR: And I think the Court already hit on this, that [Robinson] has the ability to abide by the courtroom protocol and Rules of Criminal Procedures and Rules of Evidence. I think the Court inquired about that a while ago.

DEFENDANT: Also, Your Honor, I understand I got to abide by them rules, but I just want the prosecutor to know he got to abide by the rules, too.

. . .

THE COURT: You understand that if you represent yourself you cannot, that precludes you from filing what is referred to as a Rule 37? A Rule 37 basically means that . . . if you're representing yourself [and] you violate provisions of the Constitution, the trial cannot be overturned because you have elected to represent yourself.

DEFENDANT: Yes, sir, I understand most of it.

With that response by Robinson and after the conclusion of a few other housekeeping matters, the jury trial began.

The above testimony first demonstrates that Robinson's waiver was equivocal. He expressly stated that he did not want to represent himself. Instead, he said that he would represent himself only if he could not have another lawyer. The colloquy secondly demonstrates that Robinson's waiver was not knowing and intelligent. The trial court made minimal inquiries of Robinson—only asking how much education he had and if he could read, write, and understand English. The trial court made only two admonitions to Robinson—he had to comply with the Rules of Evidence and Criminal Procedure and he could not file a Rule 37 petition for ineffective assistance of counsel if he elected to represent himself. Finally, the trial court gave Robinson absolutely no explanation of the consequences of failing to comply with the rules, i.e., the inability to secure the admission or exclusion of evidence or the failure to preserve arguments for appeal. Because there was no discussion about the substantive risks of proceeding without counsel, Robinson's waiver was not knowing or intelligent.

Accordingly, we hold that the trial court's finding that Robinson made an unequivocal, knowing, and intelligent waiver of his right to counsel is clearly against the preponderance of the evidence, and we reverse and remand. Based on our disposition of Robinson's first point on appeal, it is not necessary to address his remaining arguments as they are unlikely to arise in a subsequent trial.

Reversed and remanded.

HART and GLADWIN, JJ., agree.