

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–16–908

|  |  |  |
|---|---|---|
| DONNELL ROBINSON | **APPELLANT** | **Opinion Delivered:** June 7, 2017 |
|  |  | APPEAL FROM THE CHICOT COUNTY CIRCUIT COURT [NO. 09CR-14-62] |
| V. |  |  |
| STATE OF ARKANSAS | **APPELLEE** | HONORABLE R. BYNUM GIBSON, JUDGE |
|  |  | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Donnell Robinson was found guilty of first-degree murder by a Chicot County jury. He was sentenced to forty years' imprisonment. He argues on appeal that the trial court erred and abused its discretion in: (1) its failure to make specific directed-verdict motions on appellant's behalf, thus not preserving the issues for appeal; (2) denying appellant's motions for directed verdict based on insufficiency of the evidence; and (3) its finding that appellant had made an effective waiver of his right to counsel and could proceed pro se. We affirm.

Appellant was charged in the July 17, 2014 murder of April Taylor. Taylor was found dead on the floor in her home due to blunt force injuries to her head.[1] Appellant

---

[1]Arkansas Department of Human Services (DHS) was bringing Taylor's four children for a scheduled visit, but Taylor did not answer the door. One of the older children looked through a window and saw Taylor lying on the floor. DHS then contacted the local police

and Taylor were in a relationship and had been living together until July 16, 2014, when Taylor kicked appellant out of the house. While detectives were on the scene conducting interviews with Taylor's neighbors, they developed appellant as a person of interest. Appellant subsequently appeared and was taken in for questioning. An arrest warrant was issued for him on July 18, 2014, and he was charged by information on August 5, 2014, as a habitual offender with Taylor's death. Appellant had his first appearance before Judge Don E. Glover on July 21, 2014. At that time, he was advised of the charges against him and was told that he would be appointed an attorney to represent him. Appellant's plea and arraignment took place on September 8, 2014, before Judge Sam Pope. At that time, appellant informed the court that he had hired his own lawyer, Greg Robinson, to represent him. After several continuances, appellant's omnibus hearing took place on March 30, 2015. At that time, appellant informed that court that he had fired his attorney because the attorney had not talked to appellant about the case and because the attorney was "no good" and was an "ineffective assistance of counsel." Appellant advised the court that he wished to represent himself and that he had done so in a trial in 2009.[2] Upon questioning by the

---

so that entry could be made into the home. By the time medical personnel arrived, Taylor was dead.

[2]In that case, appellant (pro se) was found guilty of terroristic threatening and being a felon in possession of a firearm by a Chicot County jury. He was sentenced to sixty years' imprisonment. He appealed his convictions on five different grounds, including his contention that the trial court erred in finding that he had effectively waived his right to counsel. This court agreed that there had been no unequivocal, knowing, and intelligent waiver by appellant of his right to counsel and reversed and remanded the case. *Robinson v. State*, 2010 Ark. App. 430, 376 S.W.3d 484. After a new trial, appellant was found guilty but received ten years' imprisonment.

 

court, appellant stated:[3]

> You asked me a while ago why did I want to represent myself. That is the only way I can get my paperwork, [be]cause with an appointed attorney, he is not going to get me the paperwork that I asked for and that I am due.
>
> If I ask [the attorney] to send me this, send me that, this is what you are supposed to send me because this is my guaranteed rights of the United States Constitution and Arkansas Constitution, just like I will say here now, the oath of office, you all solemnly swear to affirm and support the Constitution of the United States and the Constitution of the State of Arkansas. You all are just rebelling against the United States Constitution because you all are not following the rules, not even Arkansas rules of criminal procedure. All I am asking for is justice right here, to follow the rules.

The court responded by telling appellant that it sounded like appellant was "just spouting off a bunch of generalities" and that he did not "know anything about the particulars." The court found that appellant was not capable of knowingly and intelligently representing himself. The court discharged Robinson and appointed Steven Porch to represent appellant.

At the May 4, 2015 hearing, Porch informed the court that appellant "has stated unequivocally and emphatically that he wants to exercise his. . . right to represent himself." According to Porch, appellant refused to talk to Porch or give him any information necessary for Porch to effectively represent appellant. The following colloquy took place:

APPELLANT: I decided that ever since my attorney messed me around. I decided that because I want my United States Constitution of America rights that is guaranteed to me. That is what I want. And I am not getting it from you judge.

While you are talking to me, I am going to let my attorney read this here. If he can sign this contract that he is going to take and fight for my United States Constitution of America rights, the amendment fourth, fifth, sixth, eighth, ninth and 14th, I might would use him.

---

[3]All quotes and colloquies are as abstracted by appellant.

The only thing the contract says that he is going to defend my United States Constitution of America rights. You can read it yourself, judge. If he ain't going to sign it, that is the reason I am not going to use him because I know he is not for me.

THE COURT: There are some dangers associated with representing yourself. When you represent yourself, you are really trying, wearing two hats. One of the hats you are wearing is that you are a defendant in a case.

There are all allegations against you that you have committed a crime and the jury has to decide whether or not the State has met its burden of proof to prove those allegations beyond a reasonable doubt.

The other hat you are wearing is as a defense lawyer. And sometimes it is hard to do both in my experience and observation. Not being thoroughly trained in the law, it would be really easy for you to waive some rights that you have in representing yourself and making an improper record here in this courtroom.

I am trying to talk to you to determine whether or not I ought to let you represent yourself. It is my obligation to warn you of the dangers of doing that and that is what I am doing. Do you have any questions about what I have said?

APPELLANT: No sir. All I know is that you are not going by the United States Constitution statutes or the rules of Arkansas Constitution. And you all did sign an oath which is Arkansas Constitution 19, section 20, saying that you will promise to uphold and support the United States Constitution and Arkansas Constitution. And you are not supporting them, judge. That is perjury.

THE COURT: I don't need any lectures from you. I know the oath I took. I was there when I took it. You were not. But you are stupid. You are a fool.

APPELLANT: I, Donnell Robinson, in front of this court, all of the spectators, am getting down on my knees in front of everyone here begging you, as if you are a God to grant me my guaranteed rights of due process of law by the Arkansas Constitution, section 8, but not limited to, to grant me equal protection of law by the 14th amendment of United States Constitution of America, but not limited to, also to grant me my rights as a United States citizen and grant me my rights by Arkansas rules of criminal procedure.

And if I cannot receive these rights, I will have my family to post on the Internet to the social media, putting all of your actions on with your name first explaining your violation, bias and prejudice toward me to show proof that you judge, are not honored of trust and not qualified to sit on a bench as a judge, a judge that jumps on a person at a public place breaking and violating the laws that he is supposed to protect.

THE COURT: You are a fool. I will say it the last time. You do not know what *you are* doing.

APPELLANT: Well, the judge called me a fool. You heard it right here. I am a fool. But I will have your job. I'm going to sue you, judge. You called me a fool. You know the Bible says do not call nobody no fool and you just called me a fool three or four times.

THE COURT: You are. You keep acting the way you do, this thing is going to be checked around from judge to judge and you are going to be in the penitentiary forever. I am worried about you, because you- -you are so- -you do not know what you are doing. That's right, you are so foolish.

APPELLANT: I am so foolish, right? Remember? I am a fool. That is what you just said, judge.

THE COURT: I do not know that anybody is capable of handling Mr. Robinson's case. He has acted in such a way that I cannot do it fairly. I am recusing. I am not going to mess with him anymore. Judge Glover has already recused, I think. That concludes my business for today.

Appellant appeared before Judge Glover on July 6, 2015, for a hearing. When asked if he had a lawyer, the following took place:

APPELLANT: No sir, I am representing myself.

THE COURT: Okay. Do you understand you have the right to be represented by counsel?

APPELLANT: Yes, sir.

THE COURT: And you have the right to represent yourself as well. Have you ever had a lawyer to represent you?

APPELLANT: I had one but I fired him, because he was not doing his job. I would not have a problem with a lawyer if he was fighting for my United States Constitution of America rights and my Arkansas Constitution of America rights of due process of law; both of them, and of the ninth amendment too.

I am invoking, which it means calling upon my constitutional rights, right now. Because you did sign the Arkansas Constitution, article 19, section 20, oath of office, of public offices, when you got your job. You did say, I do solemnly swear to affirm that I will support the Constitution of the United States and the Constitution of the state of Arkansas. And without doing that, this case is that that would be perjury, because if you do not support the Constitution of the United States and Arkansas Constitution. And if you are found guilty of perjury, you can get two years in the penitentiary [be]cause you violated my fifth amendment of United States Constitution of America, of due process of law.

And also, you have violated my Arkansas Constitution, article 2, declaration of rights, section 8, due process of law, but not limited to all my rights. The fourth amendment, the fifth [a]mendment, the sixth amendment, the eight amendment, the ninth amendment and the 14th amendment of the United States Constitution of America, you all have violated, infringed and abridged, meaning to cut short, to belittle. So I am invoking, calling upon, my rights as of today.

THE COURT: Well, just slow down a bit now. First of all, I am not on trial this morning, but you are. And I understand you are at omnibus hearing.

APPELLANT: I want my constitutional right issues. My fundamental rights of due process. You all are violating them.

THE COURT: Well, exercise your rights in whatever way you need to. Now, what I normally do in cases- -you have the right to represent yourself. Normally, in cases like this, I will [ap]point a standby lawyer who will be accessible to you for any legal assistance or help, or footwork, that you might request of him or her. And I am going to institute that process if it is not in existence already.

The public defender's office will serve as a standby lawyer to research and will assist you in any way you want him to assist you. He will not be compelled until you serve or take advantage of your constitutional right to represent yourself.

Now, there is going to be a jury trial. There's going to be rules of criminal procedure, whether you represent yourself or whether somebody else assist you, whoever handles the case will be required to follow. And being a lawyer is very similar to being a physician. Most of us, we will all have medical issues. We go and get the assistance of a doctor if we want to. That is the option we have. Some of us may work on our ailments ourselves. But you ultimately have your right to work on these issues yourself. I just want you to know that I am going to appoint a standby lawyer for your benefit.

I am going to give you time to go through all of your motions. The public defender will be available. You can talk to him if you want to; it is not required. Then I am going to call you up later. I am going to continue this momentarily.

I am going to call up Mr. Robinson. Mr. Robinson, I have read your previous case, and I am going to consider your pleadings as a motion for me to recuse. And I am going to do that. I am going to recuse and assign it to another judge to hear this matter. So you will get another court date from another judge. Have a good trip back.

Appellant appeared before Judge R. Bynum Gibson on August 17, 2015, for hearing. At the hearing, Porch informed the court that appellant refused to meet with him and sent a statement to him that stated, "I, Donnell Robinson, do not and will not accept attorney Steve Porch as my attorney. I will represent myself as pro se. The sixth amendment of the U.S. Constitution gives me the right to represent myself." Appellant signed the letter. The court questioned appellant after noting that certain questions had already been asked and answered on the record before the two previous judges. The following took place:

THE COURT: Would you require any attorney, not just Mr. Porch or Mr. Mazzanti, but any attorney that represented you to sign what Mr. Porch declined to sign?

APPELLANT: If they let my motions go, not what he is got to say, but my motion--yes sir, I would want the attorney to argue my motions. That is correct. I ain't going to say that would apply to any attorney. But, like I said, if they cannot fight for my United States constitutional rights or my Arkansas rights, I cannot accept that attorney. But you

can give him to me and I accept him and then he is going to fight for me, I am going to- -

THE COURT: I will take that as a "yes." Very well. Now, the only other questions I wish to ask you are these regarding you representing yourself. You have done it once in a case before Judge Glover. You were convicted and received 60 years. Did you conduct the voir dire in that case of the jury?

APPELLANT: Well, no, sir. I did not have too much to say, I will say it like that.

THE COURT: Well, you know what voir diring the jury is?

APPELLANT: No, sir, but I can look it up because- -

THE COURT: And I am sure you will. I am just asking you because it is part of the trial for you [to] select the jury. All right, with respect to rules of evidence, particularly those that govern the admissibility of competent evidence, of relevant evidence, and govern the non-admissibility of hearsay unless it is subject to some exceptions, are you at all familiar with those rules of evidence?

APPELLANT: I really did not understand too much of what you said, but I know about the hearsay and- -

THE COURT: Are you familiar with rules of evidence governing the admissibility or inadmissibility of evidence because it is either incompetent, it is hearsay, or not relevant? Are you familiar with those rules?

APPELLANT: I am familiar with them, but before we go to them rules, I would like-

THE COURT: But let me do this and then I will hear from you. Okay. I take that as a no. Those rules, let me explain to you are important, especially, in a case such as this because after reviewing a portion of the file, I see that the State's case is based upon circumstantial evidence. In other words, there is no direct evidence. There's nobody who is going to testify that they saw you harm the victim. There is not going to be any confession that comes in. You have not made any incriminating statements, so the State is going to rely upon circumstantial evidence. And in those cases, particularly, it is important to be acquainted with the rules of evidence that you can make proper objections because even hearsay, if it comes in not objected to, is competent evidence that can sustain a conviction. And an attorney, if a trained attorney representing you, they may be

able to prevent hearsay from coming in; and because you do not know what it is when you see it, or hear it, you may not and it could prejudice your case. That is the reason that, particularly in the circumstantial evidence cases, representation by a competent counsel is important. And I want you to understand that before you waive your right to counsel. Do you understand what I have just told you? And you still wish to waive your right to counsel?

APPELLANT: Yes, sir.

THE COURT: Okay. Now, with respect to jury instructions, in a case such as this first degree murder case, at the conclusion of the proof, the State is responsible for offering jury instructions. The defense may offer jury instructions also. That is things I tell the jury that should guide them in their deliberations, the law. It is the responsibility of the defendant, if you believe that there is an instruction that would help your case or be favorable to you, something I should tell the jury. It is your responsibility to prepare that instruction, submit it to the court; just as if you had an attorney, the attorney would be. And the State is not obliged to furnish instructions that may favor you on lesser-included offenses or anything like that. So knowing that, does that affect your decision in any way to- -

APPELLANT: No, sir.

THE COURT: And I do not know anything about the case you had in front of Judge Glover. I see the first trial you got sixty years where you represented yourself. I see the second trial where you did not represent yourself, apparently somebody represented you, you got ten. Big difference between ten and sixty. Do you think it was because you had a lawyer?

APPELLANT: No, sir, because the lawyer did not do his job. He did not mention nothing about due process of law at all. He did do fifty years better than I did for myself. And at the same time, that was double jeopardy, which I can sue for that, but he was not fighting for me at all. Yes sir. I do know the difference sometimes in the outcome if you have a lawyer and do not have a lawyer.

I would like to say, if you do not mind, I was wanting to know if you are going to honor your oath of office of the Constitution-

THE COURT: I have always honored my oath of office, at least I think so, and I am not going to listen to anybody's sermon on that.

9

APPELLANT:    I am going to ask you another- -

THE COURT:    You are not going to ask me anything else.  I am giving you the trial dates.  It will be a jury trial.  I will set it for pretrial.  You are having the omnibus hearing right now.  I am conducting a type of pretrial here.  If you want to say anything else, you will have to say it to the wall outside the courtroom because I will have you removed in a flash- -if you want to remain in here, you will have to be quiet right now while I talk to my case coordinator.  Do not say anything or I will have you removed- and I do not want to have to do that- but it will not bother me.

Appellant's first pre-trial hearing took place on October 8, 2015.  At that hearing, the following took place:

APPELLANT:    I want to make it clear to this court right now that I, Donnell Robinson, want an attorney appointed to me, which is my guaranteed right by the sixth amendment of the United States Constitution; and amendment 14 of the United States Constitution gives me equal protection of the law in which Dr. Martin Luther King and Ms. Rosa Parks fought for, also Mr. Dred Scott.

THE COURT:    I agree. You are entitled to an attorney if you want one.  Do you want one?

APPELLANT:    Yes, sir. And I also want- -since Judge Pope called me a fool in court - - which fool do mean stupid, and stupid do mean lack of normal intelligence- -I feel like I am entitled to a psych evaluation because of- -he did call me fool numerous times in court and foolish- -and foolish do mean unwise, lack of wisdom or judgment.  So in that case, I should be by law- a psych evaluation, but I also want an attorney appointed to me by the sixth amendment of the United States Constitution.

THE COURT:    All right, I will [ap]point you [an] attorney, but- -all right.  Now, let us take this one at a time.  You want an attorney appointed and you want a psych evaluation.  Have you had a psych evaluation in the past by the state hospital?

APPELLANT:    I do not recall doing it, but Judge Pope called me a fool and so I–

10

THE COURT:    Let us do this, let me take the attorney business . . . first.  All right, Mr. Porch is here.  He is the chief public defender.  He is the one who filed the motion to suppress.  I will appoint him at this time; and he can have a seat beside you.

APPELLANT:    Well, is he willing to fight for my United States constitutional rights- -if he is not going to fight for that, I am not going to accept him. Automatic. I want my rights, my guaranteed rights of the United States.  And by you not doing that, you are obstruction of justice, and being corrupt, judge, because you are not going by the oath of office which is in Arkansas Constitution, article 19, section 20- -which you did promise to uphold and support the United States Constitution and the Arkansas Constitution- -and by not doing that, judge, that is perjury on your behalf.

THE COURT:    Now, Mr. Porch is hereby appointed.  If you would take a chair by the defendant.

APPELLANT:    I need to ask you: are you violating my United States Constitution of America rights and my Arkansas Constitution of America rights that are all guaranteed to me?  I want that personally from you, please, sir. Are you violating, infringing, abridging my United States Constitution of America in Arkansas Constitution of America guaranteed rights?

MR. PORCH:    Your Honor, as you have appointed me counsel on that, I strongly disagree with what was just said. I prefer to be the mouthpiece.

APPELLANT:    Section 4 gives me freedom of speech- -you will not fight for my guaranteed rights, so how is he going to be a mouthpiece for me? It is just like a dog on a chain where they tell you to do, you jump and do.  I want somebody to defend my rights, not somebody to sit here and tell me- -piss on my back and tell me it is raining- -no, sir, I will not accept- Yes, I will have a seat, but I am still going to talk- -this man wants me to sit there like a slave- -do not forget, Judge Pope called me a fool, so hey, I guess I am a fool- -stupid.

THE COURT:    So, therefore, he has decided to disrupt at this point- -the closer we get to trial- -and he has caused two judges to leave the case.  This one is not going to leave the case or be baited into it because it has got to be resolved.  At this point, at least, the defendant has made a

motion for mental eval– –which the court under the circumstances is going to grant.[4]

. . . .

> The trial date is postponed and we will have a pretrial after the report comes back. He will be brought back for pretrial. And Mr. Porch has not made a motion to that effect, but the Court will again relieve Mr. Porch. I will ask you to remain as standby and be present at any future hearings. As soon as I appointed Mr. Porch, he was berated by the defendant here in open court. And you cannot have dual representation, number one; number two, it was clear that Mr. Robinson would not cooperate at all and make Mr. Porch's job impossible.
>
> When Mr. Robinson comes back, I am going to request that the Department of Corrections (sic) furnish security and provide a stun belt under his shirt so that if there are disruptions, the defendant can be controlled. I am telling Mr. Robinson now, you have a right to be present during the proceedings, but that right is not unlimited; and if you cannot control yourself, sit down when the Court tells you to, not speak when the Court tells you to, attack counsel, attack the Court – – if you cannot conduct yourself as an attorney would, or is required to in the courtroom, I am not required to have you present at trial. I want you to be present, but only if you can conduct yourself civilly and within the rules of conduct. This court stands in recess.

The next pre-trial hearing took place on February 22, 2016. At that time, appellant stated that he did not wish to proceed pro se. The colloquy that proceeded is as follows:

APPELLANT: Excuse me, Your Honor, I did not decide to be pro se, not at all. I am still wanting my sixth amendment right of an attorney. First, I would like to say that I want an attorney to investigate my arrest because I was not indicted like Aaron Lewis was in the Beverly Carter case. And he had a seven–hour evidentiary hearing that Judge Herbert Wright gave him. (Unintelligible) prosecution, my equal protection of rights by the 14th amendment.

THE COURT: Well, at this point, I have overruled that motion because you do not

---

[4] Appellant was found competent to stand trial.

have--

APPELLANT: Yes, you do, but I would like to see this here, first, too: could I get time of death, please?

So it is the State's position that somewhere between midnight on the 17th or 11 o'clock on the 16th, and 10 o'clock the next day on the 17th, that Defendant killed Ms. Taylor; is that correct?

THE STATE: That is correct.

. . . .

APPELLANT: With all due respect, I do not need no standby attorney. I need an attorney to fight for me- -I need one to fight for me.

THE COURT: This is what I am going to do, I am going to have you removed from the courtroom at this time.

. . . .

THE COURT: All right, I think the main thing is to make sure the subpoenas are issued and that he wishes to subpoena. I will go over with him things about voir dire but it is pointless at this point because he is not going to listen to anything without interrupting. And so he has chosen to proceed pro se, in this Court's opinion; and I am not going to force anybody from the public defender's office to collaborate with him, and take the abuse, or sign any contracts, or take any abuse. And so that is that and this is not his first rodeo. He has been on trial in this courtroom before-he was pro se-so he very well knows what he is doing. You can hear him outside the courtroom now. So that is that.

A pre-trial in-chambers conference took place on March 8, 2016, before a jury was to be picked for appellant's trial. At that time, the following pertinent colloquy took place:

THE COURT: All right, Mr. Robinson, come on in, have a seat. We are on the record. This is a first-degree murder case. We are going to pick a jury, this afternoon.

Mr. Robinson appears here for trial in his prison attire. Let the record reflect that at the last pretrial I directed the public defender to make clothes available to him at the local jail. The public defender did that; and the sheriff called me a minute ago and said

13

that Mr. Robinson declined the clothes and wanted to be tried in prison attire, his prison whites.

APPELLANT: That is right, sir. But I also want an attorney because he is not protecting my guaranteed rights of the United States Constitution, or the Arkansas Constitution, or the...I am telling you that he is supposed to protect my rights. That is what the Bar Association says. The American Bar Association says he has got two obligations: to uphold the law and to protect his client's rights[.] He has not put in any motion; he is not put in nothing at all. I have been doing all the work. And so I am asking you right now, appoint an attorney to protect my rights. That is my sixth amendment right of the United States Constitution. I want an attorney to protect me and to defend my rights, not to...I do not need no standby attorney, not at all. I finished 11th grade- -I can read, I can comprehend- -but I need somebody to defend my rights.

THE COURT: I am glad you said all of that because I want the record, for appellate purposes and for my purposes, to reflect that when you pointed referring to "he" you are referring to Steve Porch, who I have appointed to represent you before – –

And, number two, you had a paid attorney, a very good one, Greg Robinson from Pine Bluff. And while this case was pending- -before he recused before Judge Pope in April- -you fired your hired attorney because you said he would not defend your constitutional rights. When I did assign Mr. Porch to represent you during a pretrial, when you said you wanted a lawyer, you immediately stood up, handed him a document that you wanted him to sign, and I said no, he is not signing any document. And for that reason, and because of that opinion in the previous case involving Judge Glover, and wanting to appear in prison whites, I know that you are trying to create error- -or what we call "invited error"- -in this court. And I am not even required to allow you to remain in the courtroom if you cannot conduct yourself with civility.

Now, what I am telling you is this: I am not granting you any attorney besides Mr. Porch because to do so would further continue this trial -you can argue with me so far- -and I am going to send you back to the jail, and we will pick this jury without you. You can be present in the courtroom and participate in the voir dire, but only if you conduct yourself civilly. I am not required under the sixth amendment to allow you to stay in the courtroom and be disruptive-

APPELLANT: Well, I will represent myself. I will not let Steve Porch represent me because he is not protecting my guaranteed rights of the United States Constitution, Arkansas Constitution, Universal Declaration of Human Rights, or of the Rules of Criminal Procedure. So I would have no other choice but to represent myself, even though I do not want to, but I will because Steve Porch–

THE COURT: Then you will conduct yourself civilly. You will not argue with the Court in the presence of the jury or the jury panel. If you do then I will, without warning at that point, remove you from the courtroom and send you back to the jail; and the trial will go on without you until such time as you can agree to abide by the rules. Now, that is that.

APPELLANT: I have a question.

THE COURT: No, no more questions. We are here to pick a jury. And when the jury panel is sworn, the court will ask certain questions that reflect on their qualifications to serve in this case, then I will turn to the prosecutors, and they can ask some questions concerning this case, their qualifications. I will also allow you, if you wish, to ask any questions concerning whether or not any of them are close with law enforcement, or have any tendency to lean one way or another and base their decision on something other than the evidence. If you do anything besides ask a proper question in that respect, I will disallow it and tell you to have a seat, the same way I would the prosecutor. And, again, I certainly want you to be able to remain in the courtroom, Mr. Robinson, but I will not hesitate to remove you- this is the one warning you are given-if you do not act civilly.

APPELLANT: As long as he is not representing me, I am fine with that.

THE COURT: All right. He is not.

The jury was empaneled and the trial proceeded as scheduled. At the conclusion of the State's case, the court stated the following:

Now, to protect the record, I am going to go to- -the defendant does not know to do it. I am going to make a ruling that- -treated as though he has questions of the sufficiency of the evidence for a prima facia case; and I am going to find that this is not the case that I would direct a verdict in against the State. The trial court is not supposed to, normally, make motions, ask questions, but so that there is no fundamental error, I am going to treat this as a ruling on a motion for directed verdict.

And I find that there is sufficient circumstantial evidence for this to go to the jury if there was no further proof put on.

The court renewed the motion at the conclusion of all of the evidence, by stating:

Now, what the Court is going to do at this point is to make the motion for the defendant. [It] is a motion to dismiss for insufficiency of the evidence. You will renew the previous motion for a verdict and [the court will] deny the same in order to protect the record in case there is an appellate (inaudible).

The jury found appellant guilty of first-degree murder and sentenced him to forty years in the Arkansas Department of Correction. The sentencing order was entered on March 16, 2016. Appellant filed a timely notice of appeal on April 8, 2016. This appeal followed.

As his first point on appeal, appellant argues that the trial court erred in failing to make specific directed-verdict motions on appellant's behalf, thus preventing the preservation of the issues on appeal.[5] Generally, a defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure.[6] Nor does the Constitution require judges to take over chores for pro se defendants that would normally be attended to by trained counsel as a matter of course.[7] Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that a directed-verdict motion "shall state the specific grounds therefor." This court interprets Rule 33.1 strictly,[8] and failure to

---

[5]We attempted to certify this issue to the supreme court as an issue of first impression, an issue of substantial public interest, and a significant issue needing clarification or development of the law; however, it denied certification.

[6]*McKaskel v Wiggins*, 465 U.S. 168 (1984).

[7]*Id*.

[8]*Grady v. State*, 350 Ark. 160, 85 S.W.3d 531 (2002).

comply with subsection (a) "will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment."[9] In this case, the court did not make a specific directed-verdict motion on appellant's behalf. Therefore, we hold that appellant's sufficiency challenge is not preserved. However, there is no requirement for the court to take over functions for a pro se defendant. Appellant has failed to offer any convincing argument or legal citation for his claim that the court was obligated to make specific directed-verdict motions to preserve his sufficiency challenge.

As his second point on appeal, appellant contends that if this court finds that appellant's sufficiency challenge is preserved, the court erred by not directing the verdict in appellant's favor. We have already found that appellant's challenge to the sufficiency of the evidence is not preserved because there were no specific grounds argued as required by the rules.

Finally, appellant contends that the trial court erred in its finding that appellant had made an effective waiver of his right to counsel and could proceed pro se. The Sixth Amendment of the United States Constitution, made obligatory on the States by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense.[10] Article 2, section 10, of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel.[11] No sentence involving loss of liberty can be imposed where there has been a

---

[9]Ark. R. Crim. P. 33.1(c).

[10]*Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963).

[11]*Barnes v. State*, 258 Ark. 565, 568, 528 S.W.2d 370, 373 (1975).

denial of counsel.[12]  On the other hand, a criminal defendant has a right to represent himself at trial where his waiver of the right to counsel is knowingly and intelligently made.[13]

A defendant may proceed pro se in a criminal case when (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues.[14]  Our standard of review is whether the trial court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence.[15]  Appellant argues that the court erred in finding that he effectively waived his right to counsel.  He also contends that the court erred by denying his subsequent "repeated unequivocal requests for counsel."

Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused.[16]  Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights.[17]  A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant

---

[12]*White v. State*, 277 Ark. 429, 432, 642 S.W.2d 304, 306 (1982).

[13]*Faretta v. California*, 422 U.S. 806 (1975).

[14]*Bledsoe v. State*, 337 Ark. 403, 406, 989 S.W.2d 510, 512 (1999).

[15]*Pierce v. State*, 362 Ark. 491, 497, 209 S.W.3d 364, 367 (2005).

[16]*Bledsoe, supra.*

[17]*Id.*

possessed such required knowledge from other sources, is required to establish the validity of a waiver.[18] The burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel.[19] The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel.[20]

Here, the record is replete with colloquies between the court and appellant as it pertained to him wanting to proceed pro se. Appellant was warned of the general dangers associated with proceeding pro se, and he also knew first-hand of such danger; he was informed of the specific disadvantages in proceeding pro se under the circumstances of his case due to the State's circumstantial case against him; and he was questioned about his understanding of the legal process. However, appellant insisted that he be allowed to represent himself. Once the court granted appellant's wish and appointed Porch as his stand–by attorney, appellant changed his mind and insisted that he be appointed an attorney. When questioned by the court as to why he did not want Porch as his attorney, he stated because Porch would not sign his "contract." When asked whether he would require any attorney representing him to sign the "contract," his response suggested that he would. The court then informed appellant that the only attorney it would grant him was Porch. Appellant stated that he did not want Porch as his attorney and that he would represent

---

[18]*Id.*

[19]*Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001).

[20]*Id.*

himself. Porch was available throughout the trial if appellant chose to use him; however, appellant did not take advantage of Porch's presence. We hold that appellant made an effective waiver of his right to counsel.

We note that, even in the absence of a voluntary and intelligent waiver of the right to counsel, the right to counsel may be forfeited by a defendant who engages in conduct that prevents a fair and orderly exposition of the issues.[21] The right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice.[22] Once competent counsel is obtained, the request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice.[23] The constitutional right to counsel is a shield, not a sword, and a defendant may not manipulate this right for the purpose of delaying trial or playing "cat-and-mouse" with the court.[24] Appellant had access to competent counsel, and he was obviously attempting to prevent the scheduled trial and thwart the court system. Under these circumstances, the court was correct in refusing to appoint appellant an attorney other than Porch.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.

---

[21]*Beyer v. State*, 331 Ark. 197, 962 S.W.2d 751 (1998).

[22]*Burns v. State*, 300 Ark. 469, 780 S.W.2d 23 (1989).

[23]*Id.*

[24]*Wilson v. State*, 88 Ark. App. 158, 196 S.W.3d 511 (2004).