ROBERT J. GLADWIN, Judge
On February 7, 2018, Adam Patton was convicted in the Desha County Circuit Court of rape and incest.[1] On appeal, he argues that the circuit court violated his Sixth Amendment right to assistance of counsel. We affirm.
I. Procedural History
Appellant was charged by information filed on August 19, 2016, with the rape of his son, JP. The information was amended on May 16, 2017, to include three counts of rape and two counts of incest involving the same victim.
At the pretrial hearing on September 18, 2017, the circuit court granted defense counsel's motion to withdraw, which was based on appellant's failure to contact him. Appellant alleged that he had tried to contact his lawyer but agreed that they had not spoken prior to the pretrial hearing. When the circuit court told appellant that it was inclined to grant counsel's motion to withdraw, appellant asked the court to give him time to find another lawyer. The circuit court granted the motion to withdraw and continued appellant's case until January 22, 2018, which was the pretrial date. The circuit court told appellant that he needed a lawyer on his case within the next month to two months. The trial date was reset to February 6-9, 2018.
At the pretrial hearing on January 22, appellant told the court he had not hired another attorney because he could not find anyone he "could come to an agreement on, moneywise, financially." The following colloquy occurred:
THE COURT : Mr. Patton is here for pretrial. The State has charged him with the offenses of rape, which allegedly occurred between 2012 and 2016. He was formerly represented by Mr. Robinson, his firm, which filed a motion to withdraw which I granted in September. He was to hire another lawyer. [Appellant], have you done that?
APPELLANT : No, sir, Your Honor. I haven't, I guess, found somebody that we could come to an agreement on, moneywise, financially. I was here today to ask you for, if maybe the courts would appoint me one, to say the evidence and all that the courts have against me, I guess I'm unprepared You know, I have spoke to a few different lawyers. We just can't come to an agreement, Your Honor, so I'm kind of at your mercy.
THE COURT : What is your income?
APPELLANT : Right now, Your Honor, not a lot. You know, I ran across a little stroke of luck a little while back with *908 the lottery, and all that I've been living off of, me and my family. As far as income weekly, there isn't any.
THE COURT : How much money do you have left from your winnings?
....
APPELLANT : Well, there was remodeling of my mother's home, vehicles for my wife and my oldest son, one for me, one for my mother. So
....
THE COURT : You're not indigent. I'm not going to appoint you a lawyer. It's clear to me that you are trying to take advantage of the system. Now, you're going to trial in two weeks with or without a lawyer. I don't care.
....
THE COURT : Well, I'm not going to appoint him counsel. He is not indigent. And that's what I, the Constitution requires is me to appoint indigent counsel. Now, if he wants to go to trial without a lawyer, he's made that choice as far as I'm concerned. Just his statements regarding his disposition of his lottery winnings is clear to me that he had not taken care of his personal business and he's putting himself in this position. I so find. So, we'll just go from there. You're ordered back to court for jury trial February 6th-we're going to set that date right now-at 8:30 a.m. You can be dismissed until then.
Prior to the commencement of the trial on February 6, the State requested as follows:
PROSECUTOR : Judge, the only other issue-and the court may have done this on the pretrial date that we had, you know, a little over two weeks ago and I may have missed it. But-So if the court has done this, I'll withdraw the request.
With the situation we're in with [appellant] being deemed not to be indigent, I didn't know if there was a record made as the fact that he did win the lottery, he acknowledged that, the amount that he won and when that was. I think-I don't think the record reflects that. And I would ask that, the court would inquire as to that so that the record would reflect that, that winnings and earnings.
APPELLANT : I believe it was around the first of March or so, Your Honor. It was a little over six hundred and eighty thousand ($ 680,000) is what I left there with.
THE COURT : Okay. So around March 1st of 2017?
APPELLANT : Yes, sir.
THE COURT : You received how much?
APPELLANT : Six hundred and eighty thousand dollars ($ 680,000) is what I deposited into an account.
THE COURT : From the Arkansas Lottery? That was after taxes?
APPELLANT : Yes, sir.
THE COURT : Okay.
PROSECUTOR : And that was while this case was pending?
THE COURT : Yes.
APPELLANT : While I was out on bond.
THE COURT : Of course, you've had a lawyer in this case before.
APPELLANT : Yes, sir. And, Your Honor, I did search for counsel, you know. And, like I say, everybody has heard about the lottery and since they know, you know, the number they threw out there is just astronomical and I couldn't you know, I couldn't justify paying somebody those five digits , you know, numbers to talk about *909 something they had no idea. I mean, I understand they are more knowledgeable about, your, the way things go in here. But as far as what me and my son went through ... (emphasis added).
THE COURT : Well, you've got some serious charges, [appellant].
APPELLANT : Yes, sir.
THE COURT : I tried to talk to you about this and I've tried to encourage you to get your own lawyer. I realize that the fact of your lottery winnings may be knowledge, public knowledge, so that, you know, maybe people try to gouge you or whatever. I don't know. But it would seem to me that if you look long and hard enough, you could find somebody to represent you for a reasonable sum of money. Because of the serious nature of the charges ...
APPELLANT : Yes, sir.
THE COURT : ... you might be getting quoted some high fees. I don't know. I don't know all that's involved in it. But you certainly have resources to hire counsel and that's the reason I ruled the way I did.
The State presented four witnesses-appellant's wife, two police officers, and the victim, JP. Appellant and his mother testified for the defense. At the conclusion of evidence, the State dismissed one count of rape. The jury convicted appellant of two counts of rape and two counts of incest, and he was sentenced to a total term of 312 months' imprisonment. Appellant filed a timely notice of appeal.
II. Applicable Law and Standard of Review
The Sixth Amendment to the United States Constitution, made obligatory on the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. Gideon v. Wainwright , 372 U.S. 335, 342-44, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 2, section 10 of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. A criminal defendant has a right to represent himself at trial when his waiver of the right to counsel is knowingly and intelligently made. Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Arkansas Rule of Criminal Procedure 8.2(a) (2017) provides that a judicial officer shall determine whether the defendant is indigent and, if so, appoint counsel to represent him or her at the first appearance, unless the defendant knowingly and intelligently waives the appointment of counsel. In the instant case, the circuit court found that appellant was not indigent.
On appeal, the standard of review is whether the trial court abused its discretion in finding that petitioner was not indigent. Burmingham v. State , 342 Ark. 95, 27 S.W.3d 351 (2000). The criteria to be used in determining the indigency of a defendant are set out in Burmingham . Indigency is considered on a case-by-case basis, and the burden of establishing his status as a pauper is on the defendant claiming indigent status. Id. Although there is no set test for indigency, which is a mixed question of fact and law, some of the factors to be considered are (1) income from employment and governmental programs such as social security and unemployment benefits; (2) money on deposit; (3) ownership of real and personal property; (4) total indebtedness and expense; (5) the number of persons dependent on the appellant for support. Id. The ability of *910 bystanders such as friends and family members to assist with expenses is not a factor in determining a petitioner's indigency, although an exception may be made if the petitioner has control or complete discretionary use of funds raised by others. Id.
Berger v. Kelley , 2018 Ark. 381, at 3, 563 S.W.3d 557.
III. Argument
Appellant argues that the circuit court violated his Sixth Amendment right to assistance of counsel. He argues that the court erred by granting defense counsel's motion to withdraw before assuring that new counsel had been retained, indigent counsel had been appointed, or the accused voluntarily and intelligently waived the assistance of counsel. Tollett v. U.S. , 444 F.2d 622 (8th Cir. 1971). He argues that the law in Arkansas is that an accused cannot be tried without the assistance of an attorney unless such right is voluntarily and intelligently waived. Murdock v. State , 291 Ark. 8, 9, 722 S.W.2d 268, 269 (1987). Appellant argues that new counsel was not retained, counsel was not appointed, and the record does not indicate that he made a voluntary and intelligent waiver of counsel.
Appellant contends that the circuit court twice made a finding that he was not indigent and declined to appoint counsel. He contends that he desired counsel and did not waive his right. He claims that he was never given the opportunity to execute an affidavit of indigency for the court's review, and he argues that the lottery winnings that were referenced had been spent and he did not have any current income.
Appellant claims that, even assuming a developed factual basis for declining to find him indigent, the circuit court deprived him of his right to counsel because a voluntary and intelligent waiver was not established on the record. He cites Scott v. State , 298 Ark. 214, 766 S.W.2d 428 (1989), for the proposition that the record must show that an accused intelligently and understandably rejected counsel. In Scott , the Arkansas Supreme Court reversed and remanded the defendant's DWI conviction because there was no record on the defendant's waiver of counsel. Appellant contends that the record here establishes that he desired the assistance of counsel. Further, he claims that his trial performance exhibited a lack of rational understanding of the rules of evidence or the natural stages of a trial.
The State contends that the circuit court did not abuse its discretion because appellant had abundant means and time to hire counsel but decided not to. The State contends that this is not a waiver case but a forfeiture case. We agree that while there is not a voluntary and intelligent waiver on the record, appellant forfeited his right to counsel. In Robinson v. State , 2017 Ark. App. 377, 526 S.W.3d 20, this court held:
We note that, even in the absence of a voluntary and intelligent waiver of the right to counsel, the right to counsel may be forfeited by a defendant who engages in conduct that prevents a fair and orderly exposition of the issues. The right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. Once competent counsel is obtained, the request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. The constitutional right to counsel is a shield, not a sword, and a defendant may not manipulate this right for the purpose of delaying trial or playing "cat-and-mouse" with the court. Appellant had *911 access to competent counsel, and he was obviously attempting to prevent the scheduled trial and thwart the court system.
Id. at 20, 526 S.W.3d at 33-34 (citations omitted).
The State claims that appellant's refusal to hire counsel despite abundant means and opportunity to do so frustrated the orderly administration of justice. See, e.g. , Philyaw v. State , 288 Ark. 237, 704 S.W.2d 608 (1986) (noting that Philyaw was only allowed to use the telephone at night and could not reach an attorney during the week he was given to secure counsel), overruled on other grounds by Oliver v. State , 323 Ark. 743, 918 S.W.2d 690 (1996). Appellant was free on bond during the relevant time period. Further, appellant had won the lottery, taking home $ 680,000 during the pendency of the case. He established on the record that he did not want to hire a lawyer because he could not justify spending the money. Thus, the circuit court did not abuse its discretion in determining that appellant preferred not to hire a lawyer. Accordingly, the circuit court's ruling that appellant forfeited his right to counsel by refusing to hire counsel for his defense was not an abuse of discretion.
Affirmed.
Vaught, J., agrees.
Glover, J., concurs.

The original sentencing order was filed on February 7, 2018, and the amended sentencing order was filed on February 16, 2018.