David M. Glover, Judge, concurring.
Patton was charged with rape and incest of one of his sons. He retained counsel; counsel was later discharged, after hearing, by the circuit court, at counsel's request. Patton was told by the circuit court to get a new lawyer within the next two months. While out on bond for the charges of which he was eventually convicted, Patton won $ 1,000,000 in the Arkansas lottery, netting $ 680,000 after taxes.
As the State argues and the majority confirms, this case is a forfeiture issue and can be affirmed as such. I write simply to express very strong concerns about how the trial court handled Patton's Sixth Amendment right to assistance of counsel. No member of the bar or our judiciary should be under any illusion that the manner in which this case played out is to be considered the norm in dealing with such an important constitutional right as assistance of counsel.
The circuit court could have avoided this issue entirely had it more strictly followed the law. In Philyaw v. State , 288 Ark. 237, 248, 704 S.W.2d 608, 613 (1986), overruled on other grounds by Oliver v. State , 323 Ark. 743, 918 S.W.2d 690 (1996), our supreme court held:
We adopt the reasoning of the Eighth Circuit in Tollett . When an accused appears with retained counsel, the trial judge should not allow the attorney of record to withdraw until:
(1) new counsel has been retained; or
(2) a showing of indigency has been made and counsel has been appointed; or
(3) a voluntary and intelligent waiver of the right to counsel is established on the record.
The circuit court glossed over all these alternatives. Six months before trial, even though Patton asked the circuit court to give him time to find another lawyer, as in Philyaw , he was not informed he could also retain his present counsel, even though the attorney desired to withdraw. A defendant must be informed that he can retain his paid attorney even if the attorney desires to withdraw; without that knowledge, a defendant's act of releasing his paid counsel cannot be viewed as a *912 waiver of a right to counsel. Philyaw , 288 Ark. 237, 246, 704 S.W.2d 608, 612.
Two weeks before trial the circuit court exhibited a cavalier attitude when it stated in open court, "It's clear to me that you are trying to take advantage of the system. Now, you're going to trial in two weeks with or without a lawyer. I don't care. " (Emphasis added.) This statement was made after Patton requested he be appointed counsel. By then, it was common knowledge Patton had won the lottery, but the circuit court did not provide Patton with an affidavit of indigency to complete. Though Patton likely had funds with which to retain counsel, dedicating a short amount of time to allow Patton to complete his financial information would have provided the circuit court a more complete financial picture. There was no indication in the record Patton was disruptive or rude to the circuit court during any proceedings. The circuit court concluded, "Now, if he wants to go to trial without a lawyer, he's made that choice as far as I'm concerned."
On the day of trial, to its credit, the circuit court informed Patton he had serious charges; the court had tried to encourage him to retain a lawyer; and while it was public knowledge about the lottery and maybe people were trying to gouge him, if he had looked long and hard enough, he could find someone to represent him for a reasonable sum. The circuit court then told Patton he had resources to hire counsel and that was why the court ruled as it did. Patton then proceed to trial pro se; the jury found him guilty and sentenced him to twenty-six years in prison.
On appeal, Patton argues the circuit court violated his Sixth Amendment right to assistance of counsel. The State contends Patton forfeited his right to counsel by "contumacious conduct that prevents the orderly administration of justice," and this case must be analyzed as a denial of a continuance motion under an abuse-of-discretion standard.
In Robinson v. State , 2017 Ark. App. 377, at 18-19, 526 S.W.3d 20, 33 (citations omitted), the defendant made an effective waiver of his right to counsel by engaging in conduct that prevented a fair and orderly exposition of the issues. In Robinson , we held:
Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. The burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. The "constitutional minimum" for determining whether a waiver was knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel.
The State candidly admits Patton did not knowingly and intelligently waive his right to counsel, but instead contends, relying on Robinson , that Patton forfeited his right to counsel by engaging in conduct that prevented a fair and orderly exposition of the issues.
The facts of Robinson are starkly different and substantially more egregious than *913 the present case. Two circuit judges[2] recused from Robinson's case; the third circuit judge, when addressing Robinson's desire to represent himself, asked Robinson questions such as did he know what voir dire was; was he familiar with the rules of evidence; did he understand jury instructions; and did he understand that the State's case was based on circumstantial evidence. After Robinson continued to change his mind about being represented by counsel, the circuit court finally told Robinson that the public defender was the only attorney who would be appointed; Robinson then stated he would represent himself, but the public defender remained on standby.
Here, Patton was seemingly unaware of the dangers of self-representation, and those dangers were not specifically pointed out to him by the circuit court. Patton was charged with deplorable sexual encounters over a substantial period of time with his son; but he had never been criminally charged before and was unfamiliar with the criminal system. It appears however, that appears Patton at all relevant times had ample remaining lottery winnings with which to retain counsel as he had earlier suggested to the circuit court he wanted to do. It is equally obvious Patton did not want to pay his defense counsel "five digits" of his funds to hire counsel to represent him in this matter, which is why this case is being affirmed as a forfeiture case as expressed in the majority opinion. Again, I simply write to point out that, unlike in Robinson -where the circuit court explained in detail the dangers of self-representation-here the circuit court failed to give any similar detail to the Sixth Amendment.
Forget the lottery winnings! Under the circumstances established here, I believe it is a slippery slope to begin denying a defendant counsel in a criminal trial and forcing him to proceed pro se without requiring an affidavit of indigency or at least attempting to obtain a knowing and intelligent waiver of counsel. The constitutional requirement is clear; that duty lies with the circuit court. We must do better than this.
I concur.

The first of the circuit judges to recuse in Robinson is the same circuit judge as in this case. Although the circuit judge informed Robinson of the dangers of self-representation, he recused after calling Robinson "stupid" and a "fool."