Cite as 2022 Ark. App. 32

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR-21-361

| | |
|---|---|
| CHRISTOPHER RICE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** January 26, 2022<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-18-133]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellant Christopher Rice brings this appeal from the revocation of his probation. His sole point on appeal is that the circuit court failed to make an appropriate inquiry into his financial ability to afford counsel. We hold that the circuit court did not abuse its discretion and affirm Rice's revocation.

On May 7, 2019, Rice pleaded guilty to failure to register as a sex offender. He was sentenced to sixty months' probation and ordered to pay $285 in fees and costs. On November 18, 2020, probation officers checked on Rice at his home and discovered pistols, shotguns, and a meth pipe. He was arrested and charged with being a felon in possession of a firearm and with being in possession of drug paraphernalia. On December 30, 2020, the State also filed a petition to revoke his probation based on the new charges.

The court held a preliminary hearing on January 11, 2021, during which it asked Rice whether he had an attorney, to which he replied he did not. The court then asked

whether he could afford an attorney, and Rice replied that he could, that he had just gone back to work, and that he planned to hire one. The court stated, "If you tell me you can afford an attorney, I'll give you the opportunity to get one," and it set a hearing for February 16, telling Rice he "better have a lawyer" by then. Rice replied, "I'll have somebody by then."

The hearing was rescheduled for March 1, Rice failed to appear, and the court issued a warrant. When Rice appeared later that afternoon, several witnesses were unable to return to conduct the hearing that day. But the court asked Rice whether he had hired an attorney, and Rice replied that he had not but planned to do so that week. Rice did not indicate that he was indigent, nor did he ask the court to appoint a lawyer for him. The court then asked Rice how much money he earns, and Rice said he makes "around a thousand a week." The following discussion took place.

COURT:     I certainly can't find you indigent making fifty-something-thousand dollars a year. And so you've had more than sufficient time to hire a lawyer at $1,000 a week. Mrs. Callahan, when did we have his preliminary?

ASSISTANT:  January the 11th, I believe.

COURT:     January the 11th. And your case has been pending since before that. And so that's —

RICE:      Well, I was laid off work, Your Honor, before. And I went back to work the week of. When I came back to court that week, that was my first week back to work.

COURT:     So seven or eight weeks, or longer, at $1,000 a week, and so — You know, you're welcome to hire one, but you've got two proceedings and one of them is going to move forward tomorrow; and that's your revocation hearing, unless there's some objection by the State —

           [No objection]

2

COURT: So tomorrow we're going to have your revocation hearing. Obviously, if you want to hire a lawyer, you can hire a lawyer.

The court then placed Rice in the Ashley County Detention Facility on the failure-to-appear warrant, told him he was entitled to a phone call, and advised that he might want to alert his family of the situation.

At the hearing the next day, the court asked Rice if he was still "unrepresented," and Rice said, "[S]ince you made me stay the night here last night I ain't got no lawyer." The court noted that Rice earns $1,000 a week, that it could not find him indigent, that he had two months to hire an attorney, and that he had informed the court in January that he would hire an attorney for the then scheduled February hearing. Rice explained he had been "catching up" on his bills, and he was going to get an attorney "this week." The court said that Rice had plenty of time to make arrangements and that he was entitled to make phone calls from the Ashley County Detention Facility just as he could have from anywhere else.

The court then continued with the probation-revocation hearing. Testimony at the hearing indicated that a meth pipe and numerous firearms had been discovered during a routine check of Rice's home. Rice testified that he was unaware of the existence of the firearms on the property, but he admitted that he did have a meth pipe and that he had been using drugs. There was also testimony introduced that Rice owed $210 on his costs, fines, and fees and that he had tested positive for amphetamines on February 11. Because Rice does not challenge the sufficiency of the evidence, we need not detail the testimony here. The court found that Rice had violated the terms of his probation, specifically, for possessing

3

firearms, for committing an offense punishable by jail or prison, and for possessing or consuming a controlled substance.

Rice's sole argument on appeal is that the circuit court erred in failing to make an appropriate inquiry into his financial ability to afford counsel, so we turn to the law governing a defendant's right to counsel. The Sixth Amendment to the United States Constitution, made obligatory on the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963). Article 2, section 10 of the Arkansas Constitution provides that an accused in a criminal prosecution has the right to be heard by himself and his counsel. A criminal defendant has a right to represent himself at trial when his waiver of the right to counsel is knowingly and intelligently made. *Faretta v. California*, 422 U.S. 806 (1975). Finally, Arkansas Rule of Criminal Procedure 8.2(a) (2020) provides that a judicial officer shall determine "whether the defendant is indigent *and, if so*, appoint counsel to represent him" at the first appearance unless the defendant knowingly and intelligently waives the appointment of counsel. *Patton v. State*, 2019 Ark. App. 63, at 6, 569 S.W.3d 906, 909 (emphasis added).

In the instant case, the circuit court found that appellant was not indigent. Indeed, Rice never argued that he was indigent. On appeal, the standard of review is whether the circuit court abused its discretion in finding that petitioner was not indigent. *Hill v. State*, 304 Ark. 348, 350, 802 S.W.2d 144, 145 (1991). The criteria to be used in determining the indigency of a defendant are set out in *Burmingham v. State*, 342 Ark. 95, 101, 27 S.W.3d 351, 355 (2000). Indigency is considered on a case-by-case basis, and the burden of

4

establishing one's status as a pauper is on the defendant claiming indigent status. *Id*. Although there is no set test for indigency, which is a mixed question of fact and law, some of the factors to be considered are (1) income from employment and governmental programs such as Social Security and unemployment benefits; (2) money on deposit; (3) ownership of real and personal property; (4) total indebtedness and expense; (5) the number of persons dependent on the appellant for support. *Id*. at 101–02, 27 S.W.3d at 355.

Rice cites *Kincade v. State*, 303 Ark. 331, 796 S.W.2d 580 (1990), in support of his argument that the circuit court failed to make a proper inquiry into his indigency. We do not find *Kincade* persuasive. In that case, Kincade told the circuit court that he could not afford to hire an attorney and that he had just closed his business because of debt. The court did not inquire into his wages, his assets, his liabilities, or his accessibility to loans. The court simply proceeded to trial without making any inquiry despite the requirement in Arkansas Rule of Criminal Procedure 8.2 that it do so.

The facts here are not similar to those in *Kincade*. Here, not only did Rice not ask the court to appoint counsel, but also Rice never stated that he could not afford to hire counsel. In fact, he told the court at the preliminary hearing that he could afford counsel and that he planned to hire an attorney. At the hearing on March 1, Rice again indicated that he could afford counsel and answered the court's question about his earnings, stating that he made $1,000 a week and had been earning that amount since early January. The burden of establishing indigency is on the defendant claiming indigent status. *Burningham*, 342 Ark. at 101, 27 S.W.3d at 355. Rice never claimed that he was indigent, told the court he earned sufficient income when the court inquired, and was provided plenty of time by

the court to arrange counsel. We hold that the circuit court did not abuse its discretion in finding that Rice was not indigent.

Affirmed.

VAUGHT and MURPHY, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.